## UNITED STATES DISTRICT COURT
## EASTERN DISTRCT OF NEW YORK

|  |  |
|---|---|
| **LOUIS MCLAUGHLIN,** | Case No. 14 Civ. 4107 (ENV) (RML) |
| **Individually and on Behalf of All Others Similarly Situated,** | **CLASS ACTION** |
| **Plaintiff,** |  |
| **v.** |  |
| **IDT ENERGY, INC., GENIE RETAIL ENERGY, GENIE ENERGY INTERNATIONAL CORPORATION, AND GENIE ENERGY LTD.,** |  |
| **Defendants.** |  |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

  I.  SETTLEMENT TERMS ...........................................................................................3

  II. NOTICE, CLAIMS PROCESS AND SETTLEMENT ADMINISTRATION ....................7

ARGUMENT.................................................................................................................................8

  I.  THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT
     CLASS FOR PURPOSES OF DISSEMINATING NOTICE .................................................8

    A.  The Settlement Class Satisfies the Requirements of Rule 23(a) ....................................10

        i.     Numerosity.....................................................................................................................10
        ii.    Commonality .................................................................................................................11
        iii.   Typicality ......................................................................................................................12
        iv.   Adequacy of Representation...........................................................................................13

    B.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ...............................14

        i.     Common Questions Predominate ..................................................................................14
        ii.    A Class Action is a Superior Mechanism to Adjudicate Class
            Members' Claims..........................................................................................................15

  II. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE
     PROCESS AND SHOULD BE APPROVED ....................................................................17

  III. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL..............19

CONCLUSION............................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...............................................................................................................8

*Azogue v. 16 for 8 Hospitality LLC*,
2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016)...........................................................................9

*Berkson v. Gogo LLC*,
147 F.Supp.3d 123 (E.D.N.Y. 2015) ......................................................................................10

*Ballinger v. Advance Magazine Publishers, Inc.*,
2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) .........................................................................17

*Clem v. KeyBank, N.A.*,
2014 WL 2895918 (S.D.N.Y. June 20, 2014) ...........................................................................9

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).....................................................................................................11

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)......................................................................................................15

*DeMarco v. Nat'l. Collector's Mint, Inc.*,
229 F.R.D. 73 (S.D.N.Y. 2005) ..............................................................................................11

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)....................................................................................................13

*Garcia v. Pancho Villa's of Huntington Village, Inc.*,
2012 WL 1843785 (E.D.N.Y. May 21, 2012) ......................................................................8, 9

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968).....................................................................................................15

*Handschu v. Special Servs. Div.*,
787 F.2d 828 (2d Cir. 1986)....................................................................................................17

*Hernandez v. Immortal Rise, Inc.*,
306 F.R.D. 91 (E.D.N.Y. 2015)................................................................................10, 12, 14, 15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...........................................................................9

*In re Mercedes-Benz Antitrust Litig.*,
213 F.R.D. 180 (D.N.J. 2003) .................................................................................................16

*In re Painewebber Ltd. Partnerships Litig.*,
  147 F3d 132, 138 (2d Cir. 1998)...........................................................................................9

*In re Traffic Exec. Ass'n*,
  627 F.2d 631 (2d Cir. 1980).................................................................................................9

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F3d 108 (2d Cir 2013)..................................................................................................17

*In re Visa Check/Master Money Antitrust Litig*,
  280 F.3d 124 (2d Cir. 2001)..........................................................................................15, 16

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012).........................................................................................13

*In re Zyprexa Prod. Liab. Litig.*,
  253 F.R.D. 69 (E.D.N.Y. 2008).........................................................................................16

*Jackson v. Bloomberg, L.P.*,
  298 F.R.D. 152 (S.D.N.Y. 2014)......................................................................................14

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)..............................................................................................13

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009)...............................................................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..........................................................................................................18

*Puglisi v. TD Bank, N.A.*,
  2015 WL 574280 (E.D.N.Y. Feb. 9, 2015).......................................................................8, 9

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)..............................................................................................12

*Rossini v. Ogilvy & Mather, Inc.*,
  798 F.2d 590 (2d Cir. 1986)..............................................................................................14

*Sierra v. Spring Scaffolding LLC*,
  2015 WL 10934779 (E.D.N.Y. May 8, 2015) ....................................................................8

*Steinberg v. Nationwide Mut. Ins. Co.*,
  224 F.R.D. 67 (E.D.N.Y. 2004).........................................................................................11

*Sukhnandan v. Royal Health Care of Long Island LLC*,
  2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013).......................................................................8

*Toure v. Cent. Parking Sys.*,
  2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)...................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S.Ct. 2541 (2011)......................................................................................................... 10, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005)......................................................................................................... 9

## Treatises

Newberg on Class Actions §§11.22, et seq. (4th ed. 2002)............................................................ 9

Manual for Complex Litigation (3d ed.)......................................................................................... 9

Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.) ...................................................... 14

This memorandum is submitted in support of preliminary approval of a class action settlement between Plaintiffs Louis McLaughlin, Anthony Ferrare and Deborah Aks (collectively "Plaintiffs") and Defendants IDT Energy, Inc., Genie Retail Energy, Genie Energy International Corporation, and Genie Energy LTD (together, "Defendants" or "IDT"). As detailed below, this nationwide settlement of three pending class actions against Defendants satisfies Federal Rule of Civil Procedure 23 and is fair, reasonable and adequate. Consequently, Plaintiffs respectfully request that preliminary approval be granted. Defendants do oppose this motion.

**INTRODUCTION**

Plaintiffs are residential gas and electricity consumers. IDT is an independent energy supply company that sells gas and electricity in deregulated markets across the United States. The three resolved class action lawsuits challenge Defendants' marketing, pricing and rebate activities in New York, Pennsylvania and New Jersey. Plaintiffs commenced these class actions against Defendants on behalf of themselves and all others similarly situated seeking economic and prospective relief.

On July 2, 2014, Plaintiff Louis McLaughlin filed suit against Defendants in the United States District Court for the Eastern District of New York. Plaintiff Anthony Ferrare filed suit against Defendant IDT Energy, Inc., in the Pennsylvania Court of Common Pleas of Philadelphia County. On August 7, 2014, Defendant removed the *Ferrare* action to the United States District Court for the Eastern District of Pennsylvania, Case No. 2:14 Civ. 04658. Plaintiff Deborah Aks filed suit against Defendant IDT Energy, Inc. on July 15, 2014 in the Superior Court of New Jersey, Law Division, Essex County, Case No. L-04936-14.

After nearly three years of litigation in three separate venues, multiple mediations, and many months of negotiations between Plaintiffs' counsel and Defendants' counsel, the parties reached a settlement that makes available substantial monetary benefits to the members of the

proposed class ("Class Members"), as described in detail below. The settlement terms are set forth in the Settlement Agreement dated July 5, 2017, attached as Exhibit 1, to the Notice of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, together with all supporting exhibits. The negotiations, conducted by experienced and able counsel, were lengthy, vigorous, and always at arm's-length. Moreover, the settlement was reached only after multiple mediations conducted by two separate mediators, each with extensive experience assisting in resolution of consumer fraud class actions. The settlement makes available an estimated $31.26 million in cash payments or $54.60 million in bill reductions to Class Members, plus an additional estimated $10 million in cash for rebates that Plaintiffs allege were previously incorrectly calculated.

Plaintiffs conducted substantial discovery during the pendency of this litigation which provided Plaintiffs with sufficient information to weigh the strengths and weaknesses of their claims and, ultimately, to conclude that a settlement on the terms set forth below is in Class Members' best interests.

The Settlement Agreement resolves all claims asserted in these cases and confers substantial benefits on the "Settlement Class," defined as: "all current and former customers of Defendants at any time during the Class Period."[1]

Plaintiffs now move the Court to enter a Preliminary Approval Order that will: (1) preliminarily approve the class action settlement; (2) preliminarily certify the proposed Settlement Class; (3) preliminarily designate Plaintiffs and their counsel, Steven L. Wittels and J. Burkett McInturff of Wittels Law, P.C.; Jonathan Shub, of Kohn, Swift & Graf, P.C.; Troy M. Frederick, of

---

[1] Excluded from the Settlement Class are: Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such person's immediate family and the presiding judge(s) in these cases and their immediate family members. "Class Period" means from July 1, 2008, through the date of Preliminary Approval.

Marcus & Mack, P.C.; Matthew R. Mendelsohn, of Mazie, Slater, Katz and Freeman, LLC; Matthew D. Schelkopf, of McCune Wright Arevalo LLP; and D. Greg Blankinship, of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP as Representatives of the Settlement Class and Class Counsel for the Settlement Class, respectively; (4) direct that notice be sent to Class Members pursuant to the terms of Settlement Agreement; (5) find that such notice constitutes the best notice practicable under the circumstances; (6) schedule dates by which the parties and Class Members are to comply with their requirements and obligations under the Settlement Agreement, as more fully described in the proposed Order filed concurrently herewith; and (7) set a hearing date for the final approval of the proposed settlement and an award of attorneys' fees and costs.

Plaintiffs submit that the proposed settlement satisfies the standards for preliminary approval, and respectfully request that the Court preliminary approve the settlement, preliminarily certify the Settlement Class, and authorize dissemination of notice pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

## I.      SETTLEMENT TERMS

In consideration of the Releases set forth in the Settlement Agreement, Class Members who timely submit a valid "Claim Form" shall be entitled to a payment in the form of either: (i) a "Cash Settlement Payment"; or (ii) a "Credit Settlement Payment."

      i.      <u>Cash Settlement Payment</u>. Class Members who are former or current customers and elect to receive a Cash Settlement Payment shall receive a one-time payment as follows:

a. Class Members who are Low Electric Usage Customers[2] shall receive $2.50 for each month of service, subject to a cap of 15 months.

b. Class Members who are High Electric Usage Customers[3] shall receive $3.50 for each month of service, subject to a cap of 15 months.

c. Class Members who are Low Gas Usage Customers[4] shall receive $0.75 for each month of service, subject to a cap of 15 months.

d. Class Members who are High Gas Usage Customers[5] shall receive $1.00 for each month of service, subject to a cap of 15 months.

*By way of example, if a Class Member was a High Electric Usage Customer for 15 months and a High Gas Usage Customer for 14 months, the Cash Settlement Payment shall be calculated as: (15 X $3.50) + (14 X $1) = $66.50*

e. In addition to the payments provided for above, if a Class Member: (i) elects to receive the Cash Settlement Payment; (ii) is a Rebate Customer[6];

---

[2] Low Electric Usage Customers" means Class Members who receive or received electricity from Defendants whose per meter usage is less than 10,000 kWh a year, as reported by the local utility to Defendants at the time customer enrollment.

[3] "High Electric Usage Customers" means Class Members who receive or received electricity from Defendants whose per meter usage is equal to or greater than 10,000 kWh a year, as reported by the local utility to Defendants at the time of customer enrollment.

[4] "Low Gas Usage Customers" means Class Members who receive or received natural gas service from Defendants whose per meter usage is less than 1,000 therms/ccfs a year, as reported by the local utility to Defendants at the time customer enrollment.

[5] "High Gas Usage Customers" means Class Members who receive or received natural gas service from Defendants whose per meter usage is equal to or greater than 1,000 therms/ccfs a year, as reported by the local utility to Defendants at the time customer enrollment.

[6] "Rebate Customer" means Class Members who participated in any of Defendants' rebate, refund or gift programs during the Class Period.

and (iii) is <u>not</u> a Rebate Recalculation Customer,[7] such Class Member shall receive an additional $1.00 payment.

ii.    <u>Credit Settlement Payment</u>.  Class Members who are customers of Defendants as of the deadline to file a claim may elect to receive a Credit Settlement Payment and shall receive a credit on Defendants' supply charge to the Class Members' future energy bills as follows:

    a.  Class Members who are Low Electric Usage Customers shall receive a credit of $4.25 for each month of service, subject to a cap of 20 months.

    b.  Class Members who are High Electric Usage Customers shall receive a credit of $5.25 for each month of service, subject to a cap of 20 months.

    c.  Class Members who are Low Gas Usage Customers shall receive a credit of $1.70 for each month of service, subject to a cap of 20 months.

    d.  Class Members who are High Gas Usage Customers shall receive a credit of $2.10 for each month of service, subject to a cap of 20 months.

*By way of example, if a Class Member was a High Electric Usage Customer for 19 months and a High Gas Usage Customer for 18 months, the Credit Settlement Payment shall be calculated as: (19 X $5.25) + (18 X $2.10) = $137.55.*

    e.  In addition to the credits provided for above, if a Class Member: (i) elects to receive the Credit Settlement Payment; (ii) is a Rebate Customer; <u>and</u> (iii) is <u>not</u> a Rebate Recalculation Customer, such Class Member shall receive an additional $2.00 credit on Defendants' supply charge to the Class Member's future energy bills.

---

[7] "Rebate Recalculation Customer" means a Class Member who is a Rebate Customer entitled to receive a cash rebate from Defendants that elects to have their rebate recalculated.

iii.  <u>Rebate Recalculation Customers</u>.  A Class Member who is a Rebate Customer that was entitled to receive a cash rebate from Defendants, shall have the right to elect to have the rebate recalculated.  Any Class Member who makes such election shall:

    a.  <u>not</u> receive the additional $2.00 credit provided or the additional $1.00 cash payment provided for above; and

    b.  have their rebate recalculated by Defendants according to the following formula:

    The sum of:

      i.  the customer's actual electric usage for each complete 12-month period following the customer's enrollment multiplied by 1 cent per kWh, <u>plus</u>

      ii.  the customer's actual gas usage for each complete 12-month period following the customer's enrollment multiplied by 3 cents per therm, <u>less</u>

      iii.  all cash rebates actually paid to the customer.

    c.  To the extent the recalculated rebate is a positive number, the Rebate Recalculation Customer shall receive a cash payment in the amount of that positive number.

    d.  To the extent the recalculated rebate is a negative number, the Rebate Recalculation Customer shall receive no payment other than those set forth above.

Defendants have also agreed that, subject to the Court's final approval, Plaintiffs may seek service awards in recognition of the amount of time and effort expended in acting as

Representatives of the Settlement Class. Defendants agreed not to oppose the payment of an amount not to exceed six thousand dollars ($6,000) to each Plaintiff.

Defendants have also agreed that, subject to the Court's final approval, Class Counsel will be entitled to seek an award of attorneys' fees and costs of up to four million, two hundred ninety thousand dollars ($4,290,000.00). The award will be paid by Defendants, a payment that is separate from and in addition to the payment of the settlement proceeds to the eligible members of the Settlement Class.

Additionally, separate and apart from paying the sums described above, Defendants shall also pay the costs of notice to the Settlement Class and the cost of settlement and claims administration as set forth in the Settlement Agreement.

## II.    NOTICE, CLAIMS PROCESS AND SETTLEMENT ADMINISTRATION

The parties' claims administrator will provide notice of the settlement to Class Members by United States mail in the preprinted postcard settlement notice format set forth in Exhibit C to the Settlement Agreement. Further, the claims administrator will establish and maintain a website to provide, among other things:

a.    a copy of a long form settlement notice.

b.    select pleadings from the litigation;

c.    the Court's Preliminary Approval Order;

d.    contact information for the claims administrator and Class Counsel; and

e.    a method for electronically requesting and submitting the Claim Form.

This notice provides information to the Class Members concerning, among other things: (1) terms of the settlement; (2) instructions on submitting a Claim Form; (3) objection and opt-out rights; and (4) date, time and location of the final approval hearing.

**I.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF DISSEMINATING NOTICE**

At this juncture, Plaintiffs seek authorization from the Court to send notice to Class Members.  Plaintiffs will later seek final approval of the settlement and the Settlement Class after notice and the opportunity for the members of the Settlement Class to present their views of the settlement or opt-out.  In support of this motion, Plaintiffs will address the factors which support the Court granting preliminary approval of this settlement and authorizing notice to the Class.

As a general matter, it is appropriate for an action to be preliminarily certified as a class for settlement purposes only.  *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  "Preliminary approval . . . is the first step in the settlement process.  It simply allows notice to issue to the class and for class members to submit [claim forms] or object or opt-out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input."  *Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 05160 (PKC) (JMA), 2015 WL 10934779, at *2 (E.D.N.Y. May 8, 2015).  "Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties."  *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637 (LDW) (GRB), 2015 WL 574280, at *1 (E.D.N.Y. Feb. 9, 2015).  In fact, "[c]ourts often grant preliminary settlement approval without requiring a hearing or a court appearance."  *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE), 2013 WL 4734818, at *1 (S.D.N.Y. Sep. 3, 2013).  To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. 09 Civ. 486 (ETB), 2012 WL 1843785, at *3 (E.D.N.Y. May 21, 2012) (quoting *In re Traffic Exec.*

*Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§11.22, *et seq.* (4th ed. 2002) § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice to be sent to class members) (quoting *Manual for Complex Litigation* (3d ed.) § 30.41).

Further, courts encourage, and public policy favors, compromise and settlement of class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) citing *In re Painewebber Ltd. Partnerships Litig.*, 147 F3d 132, 138 (2d Cir. 1998). Indeed, courts favor early settlement of class actions "because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Azogue v. 16 for 8 Hospitality LLC*, No. 13 Civ. 7899, 2016 WL 4411422, at *3 (S.D.N.Y. Aug. 19, 2016) (internal quotations and citation omitted); *see also Clem v. KeyBank, N.A.*, No. 13 Civ. 789 (JCF), 2014 WL 2895918, at *5 (S.D.N.Y. June 20, 2014) (commending parties for acting responsibly in reaching early settlement).

The Court has the discretion to approve a proposed class action settlement if it determines that the proposed settlement is fair, reasonable and adequate. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Puglisi*, 2015 WL 574280, at *1 (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998)) (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Id.* (internal quotations omitted); *see also Garcia*, 2012 WL 1843785, at *2 (same); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for

that of the parties who negotiated the settlement."). For this reason, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 99 (E.D.N.Y. 2015) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116) (internal quotation marks omitted). "[W]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval, preliminary approval is granted." *Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 130 (E.D.N.Y. 2015) (internal citations omitted).

A proposed class action settlement must satisfy the requirements of Federal Rule of Civil Procedure 23(a), that is, that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

## A. The Settlement Class Satisfies the Requirements of Rule 23(a)

### i. *Numerosity*

The first requirement for maintaining a class action under Rule 23(a) is that the proposed class be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1).

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Hernandez*, 306 F.R.D. 91 at 97 (class is sufficiently numerous such that "joinder of all members is impracticable" at 150 members); *Zeller v. PDC Corporation*, No. 13 Civ. 5035 (ARR) (JO), 2016 WL 748894, at *3 (E.D.N.Y. Jan. 28, 2016) (class of 77 is sufficiently numerous). Here, the Settlement Class includes current and former customers of Defendants with more than 1.5 million customer accounts. Thus, the numerosity requirement is easily satisfied.

   *ii. Commonality*

   The second requirement of Rule 23(a) focuses on whether there exists questions of law or fact common to the class. The requirement of commonality does not require identical claims and arguments. The commonality element of Rule 23(a)(2) is considered a "minimal burden for a party to shoulder." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004). "The commonality requirement is satisfied if plaintiffs' complaints share a common question of law or fact." *DeMarco v. Nat'l. Collector's Mint, Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y. 2005). "In other words, there need only be a single issue common to all members of the class, as the critical inquiry is whether the common questions lay at the core of the cause of action alleged." *Karic v. Major Automotive Companies, Inc*., 09 Civ. 5708 (ENV), 2015 WL 9433847, at *5 (E.D.N.Y. Dec. 22, 2015) (internal quotations omitted); *see also Dukes*, 131 S. Ct. at 2551 ("Their claims must depend upon a common contention—for example, the assertion of [unlawful conduct] on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

   Here, there are many common issues of fact and law, including whether Defendants breached the price terms in their uniform customer contracts with Plaintiffs and the Class by setting

prices based on factors not contained in said agreements, whether Defendants properly calculated the value of rebates owed to Class Members, and whether Defendants' marketing practices were deceptive. Because of Defendants' alleged inability or unwillingness to provide Plaintiffs with the savings they contracted/promised to provide, Plaintiffs and the Class Members all allegedly incurred significant overcharges for their gas and/or electricity. Commonality is satisfied here.

### iii. Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class. Typicality has been found when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Karic*, 2015 WL 9433847, at \*5 (internal quotations omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Hernandez*, 306 F.R.D. at 98. "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when Defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993).

Here, the claims of Plaintiffs and Class Members arise from the same conduct. Defendants' Terms and Conditions provide specific factors that Defendants are required to rely upon in setting their rates. First Am. Class Action Compl. ("FAC") at ¶ 16, ECF No. 70. Defendants' customers are not told the actual rates that they will be charged after the initial monthly rate until they receive their bill and have used the energy for which they are being charged. *Id.* ¶ 81. Plaintiffs allege that Defendants' rates are not based on the factors outlined in the Terms and Conditions. *Id.* ¶ 132. Finally, Plaintiffs allege Defendants failed to properly calculate the rebates due to the members of

the Class, thus depriving them the full value of the promised rebate.  *Id*. ¶ 154.  As such, there are no unique facts or circumstances that would render Plaintiffs as atypical.  This same alleged conduct caused the same alleged injury to all Class Members.

### iv.  Adequacy of Representation

The final Rule 23(a) requirement , adequacy, requires that a representative party must fairly and adequately protect the interests of the class.  Adequate representation depends on two factors: (a) the Plaintiff's attorneys must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the Plaintiff must not have interests antagonistic to those of the class.  *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 100 (E.D.N.Y. 2012) citing *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).

As to the first factor, Plaintiffs' attorneys have extensive experience in successfully prosecuting large, complex consumer class actions, including class actions on behalf of residential energy consumers.  *See* Declarations of counsel attached hereto as Exhibits "A-E."  Collectively, Plaintiffs' attorneys have generated hundreds of millions in recoveries to class members.  *Id*. Further, Plaintiffs' counsel has dedicated substantial time and resources, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims.  *Id*.  The work that Plaintiff's Counsel has performed on this case demonstrates the firms' skill and commitment to representing the interests of the Class.

Concerning the second factor, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sep. 28, 2007) (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that

goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (quoting Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.)) (internal quotation marks omitted). Plaintiffs meet the adequacy requirement because they have no interests that are antagonistic to or at odds with those of the Class Members. *See Hernandez*, 306 F.R.D. at 98 ("Only a fundamental conflict of interest between a representative and the class or subclass will defeat the adequacy of representation requirement"). Moreover, Plaintiffs have contributed significant time and effort to the case by participating in numerous in-person meetings and telephone conferences with Class Counsel, providing Class Counsel with detailed factual information regarding their energy service and interactions with Defendants, participating in administrative proceedings, assisting with preliminary negotiations with Defendants' counsel, and supporting Class Counsel in the mediations. In sum, Plaintiffs have been excellent class representatives.

### B. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (1997). That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### i. Common Questions Predominate

To establish predominance, Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate

over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/Master Money Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001). Simply because a defense "may arise and . . . affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id*. at 138. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *Hernandez*, 306 F.R.D. at 98–99 (internal citations and quotations omitted).

Here, Class Members' common factual allegations and common legal theories—that Defendants breached their uniform customer contract, by failing to abide by the factors set forth therein when setting their energy rates and in whether Defendants calculated Class Members' energy rebates correctly—predominate over any questions that may affect individual Class Members. *Id*. Determining whether Class Members were injured will turn on common proof regarding the extent to which Defendants' energy rates are higher than agreed-upon rates and whether Defendants miscalculated Class Members' energy rebates. Accordingly, the predominance requirement is easily satisfied here.

### ii. A Class Action is a Superior Mechanism to Adjudicate Class Members' Claims

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial

inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[8] Plaintiffs address each factor in turn.

### 1. The interest of individual Class Members in controlling the litigation

It is in the interest of individual Class Members to proceed with this litigation as a class action. Individual prosecution of these claims is impractical—the cost of litigating a single case would exceed the potential return. "Indeed, the size of each claimant's alleged loss is undoubtedly too small to be economically litigated at all outside of a class action." *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 191 (D.N.J. 2003).

### 2. The extent and nature of litigation already commenced by the class

Plaintiffs are unaware of other pending litigation seeking relief for the same wrongdoing as is asserted in these class actions.

### 3. The desirability of concentrating the litigation in a given forum

All Plaintiffs and Defendants have consented to having this Court consider the proposed settlement. Concentrating the litigation in a single forum will allow the litigation to proceed in an efficient manner without the risk of inconsistent outcomes.

---

[8] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Zyprexa Prod. Liab. Litig.*, 253 F.R.D. 69, 199 (E.D.N.Y. 2008) (internal quotations and citations omitted).

### 4. The case is manageable as a class action

Given the overwhelming predominance of the core issues in this case, the major features are easily managed.

### 5. Class treatment is far superior to any alternative available method of adjudication

Rule 23(b)(3) provides that certification is warranted if a class-wide trial is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F3d 108, 130 (2d Cir 2013). Employing the class action device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources, prevent inconsistent adjudications of similar issues and claims, and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings. *Karic*, 2016 WL 1745037, at *12; s*ee also Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (HBP), 2014 WL 7495092, at *6 (S.D.N.Y. Dec. 29, 2014) (finding superiority where, *inter alia*, "litigation by way of a class action is more economically sensible"). Class treatment is clearly superior to the only available alternative here.

## II. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS AND SHOULD BE APPROVED

The Court is given broad power over which procedures to use for providing notice so long as those procedures are consistent with the standards of reasonableness that due process imposes. *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) (holding the District Court "has virtually complete discretion as to the manner of giving notice to class members" (internal citations

omitted)).  As the Supreme Court explained in *Mullane v. Cent. Hanover Bank & Trust Co.*, 339

U.S. 306, 314 (1950):

> An elementary and fundamental requirement of due process in any
> proceeding which is to be accorded finality is notice reasonably
> calculated, under all the circumstances, to apprise interested parties
> of the pendency of the action and afford them an opportunity to
> present their objections . . . The notice must be of such nature as
> reasonably to convey the required information, and it must afford a
> reasonable time for those interested to make their appearance.

The notice provisions in the Settlement Agreement in this case meet this standard.  If the Court

grants preliminary approval, the claims administrator will mail notice to all Class Members who

can be identified with reasonable effort, including through the records maintained by Defendants,

as well as post notice on a website to be developed for the settlement.

The claims administrator, Rust Consulting, is an experienced claims administrator and will

be responsible for the notice and claims process.  Defendants will provide class members' names

and addresses to Rust Consulting, who will send direct written notice to each Class Member (the

"Postcard Settlement Notice").  *See* Settlement Agreement, Exhibit C.  The Postcard Settlement

Notice also directs class members to an internet website where they can find further information,

including the "Long Form Notice." *See* Settlement Agreement, Exhibit B.  The Postcard Settlement

Notice also includes the phone number of a hotline where Class Members can request a copy of the

Long Form Notice without using the internet.  *See* Settlement Agreement, Exhibit C.

This form and manner of providing notice to the Settlement Class satisfies the requirements

of due process and Rule 23.  The both the Postcard Settlement Notice and the Long Form Notice

contain all the specific information required by Rule 23(c)(2)(B), and will "fairly apprise the

prospective members of the class of the terms of the proposed settlement[s] and of the options that

are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc.*, 396 F.3d at 114.

The manner of providing notice, which includes individual notice by first-class mail to all Class

Members who can be reasonably identified, supplemented by additional internet notice, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. Further, the parties have outlined the procedures the claims administrator is to follow in administering the settlement, including updating Class Member addresses, skip tracing and re-sending notices that have been retuned as undeliverable, responding to Class Member inquiries, and maintaining a case-specific call center to provide telephone support for the settlement. *See* Settlement Agreement, Exhibit D (detailing the claims administrator's responsibilities).

## III.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs request that the Court appoint Steven Wittels and J. Burkett McInturff of Wittels Law, P.C.; Jonathan Shub of Kohn, Swift & Graf, P.C.; Troy M. Frederick of Marcus & Mack, P.C.; Matthew R. Mendelsohn of Mazie, Slater, Katz and Freeman, LLC; Matthew D. Schelkopf of McCune Wright Arevalo, LLP; and D. Greg Blankinship of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, as Class Counsel. Rule 23(g) enumerates four factors for evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C)(i). These factors all militate in favor of the requested Class Counsel appointments.

Plaintiff McLaughlin is represented by Steven L. Wittels of Wittels Law, who was one of the lead trial counsel in the largest class action jury verdict in the history of employment discrimination litigation. Declaration of Steven L. Wittels ("Wittels Decl.") ¶ 4, attached hereto as Exhibit A. Mr. Wittels has also served as Class Counsel in dozens of consumer fraud, wage and hour, and employment discrimination class actions, generating hundreds of millions of dollars in recoveries to class members. *Id*. ¶¶ 3-6. Further, Wittels Law has dedicated substantial time and

resources, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims. *Id*. ¶¶ 18-25. The Wittels Law attorneys who assisted Mr. Wittels on this matter are also well-versed in consumer class actions and are highly qualified to represent the interests of the Class. *Id*. ¶¶ 7-10.

Plaintiff Ferrare is represented by Jonathan Shub, and he and his firm Kohn, Swift & Graf, P.C. possess substantial experience in class actions and other complex litigation, including consumer fraud and consumer protection class actions such as this. Declaration of Jonathan Shub ¶¶ 8-12, attached hereto as Exhibit B. Kohn, Swift & Graf, P.C. is an established law firm that currently litigates dozens of cases in state and federal courts throughout the nation, and they have more than sufficient resources to represent the Class, as demonstrated by the numerous times the firm and its attorneys have been appointed Class Counsel. *Id*. Troy M. Frederick of Marcus & Mack, P.C., who co-counseled with Mr. Shub, is an experienced attorney who regularly represents consumers, including those with claims against energy providers, like Defendants. Mr. Frederick has participated in multiple class actions and other complex litigation, including consumer fraud and consumer protection class actions, such as this.

Plaintiff Aks is represented by D. Greg Blankinship of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP; Matthew D. Schelkopf, of McCuneWright, LLP; and Matthew R. Mendelsohn, of Mazie, Slater, Katz and Freeman, LLC. These attorneys all possess significant class action experience, including experience litigating class action claims on behalf of customers of independent energy service companies like Defendants. *See* Attorney Declarations attached hereto as Exhibits C-E. Accordingly, Rule 23(g) is satisfied.

## CONCLUSION

Plaintiffs believe that the settlement is in the best interests of the Settlement Class and meets the requirements for preliminary approval. Therefore, for the reasons set forth above,

Plaintiffs respectfully request that the Court preliminarily approve the settlement and the

Settlement Class for the purpose of sending notice of the settlement to the Settlement Class.

Dated:  August 25, 2017
            Armonk, New York

## WITTELS LAW, P.C.

By:  /s/ Steven L. Wittels
            Steven L. Wittels (SW-8110)
            J. Burkett McInturff (JM-4564)
            Tiasha Palikovic (TP-5697)

            18 HALF MILE ROAD
            ARMONK, NEW YORK 10504
            Telephone: (914) 319-9945
            Facsimile:   (914) 273-2563
            slw@wittelslaw.com
            jbm@wittelslaw.com
            tpalikovic@wittelslaw.com

            *Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Motion for Preliminary Approval of Class Action Settlement was served via ECF this 25th day of August, 2017 upon all counsel of record.