# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**LOUIS MCLAUGHLIN,**

**Individually and on Behalf of All Others Similarly Situated,**

**Plaintiff,**

**v.**

**IDT ENERGY, INC., GENIE RETAIL ENERGY, GENIE ENERGY INTERNATIONAL CORPORATION, and GENIE ENERGY LTD.,**

**Defendants.**

Case No. 14 Civ. 4107 (ENV) (RML)

**CLASS ACTION**

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 6

   I.   THE LITIGATION ................................................................................................ 6

      A.   The McLaughlin Action ................................................................................ 6

      B.   The Ferrare Action ....................................................................................... 7

      C.   The Aks Action ............................................................................................ 7

      D.   Mediation and Settlement ............................................................................ 8

   II.   THE SETTLEMENT TERMS .............................................................................. 11

ARGUMENT ..................................................................................................................... 14

   I.   STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT .................. 14

   II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.......................... 15

      A.   The Settlement Is Procedurally Fair............................................................ 16

      B.   The Settlement Is Substantively Fair. ......................................................... 18

   III.   NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER. .................... 29

   IV.   THE COURT SHOULD CERTIFY THE CLASS. ................................................... 30

   V.   THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS'
   FEES AND EXPENSES TO BE PAID BY DEFENDANTS TO CLASS COUNSEL........... 30

      A.   Class Counsel Is Entitled To Compensation. ............................................. 31

      B.   Defendants Will Pay Class Counsel's Fees At No Cost To The Class. ....................... 32

      C.   The Second Circuit Has Approved Both The Percentage Method And The Lodestar
      Method, But The Percentage Method Is Preferred. ............................................ 35

      D.   The Requested Fee Is Justified Under The Percentage Method. ................... 35

      E.   The Fee Is Justified Under The Lodestar/Multiplier Method...................... 46

      F.   The Reaction Of The Class Is Overwhelmingly Favorable......................... 48

G. The Expenses Incurred Are Reasonable And Were Necessary To Achieve The Benefit Obtained. ...................................................................................................................... 49

VI. THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS ........... 50

CONCLUSION ........................................................................................................................ 52

**TABLE OF AUTHORITIES**

## Cases

*Adams v. Rose*, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) .................................................. 42

*Aks v. IDT Energy, Inc.*, No. L-04936-14 (Super. Ct. N.J. Essex County) ..................... 1, 7, 8, 39

*Aros v. United Rentals, Inc.*, 2012 WL 3060470 (D. Conn. July 26, 2012) .............................. 36

*Arthur v. SLM Corp.*, No. 10 Civ. 198 (W.D. Wash. Aug. 8, 2012) ......................................... 22

*Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174 (E.D.N.Y. 1999) ............................... 39

*Beckman v. KeyBank, N.A.*, 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) ........................ 32, 38

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ............................................................... 31, 36

*Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179 (S.D.N.Y. 2012) ............................ 21

*Chin v. RCN Corp.*, 2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ........................................... 48

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ..................................... 15, 27, 42

*Clark v. Ecolab Inc.*, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .................................... 32, 44

*Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2007) .......................................................... 37

*County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295 (2d Cir. 1990) .......................... 21

*D'Amato v. Deutsche Bank*, 235 F.3d 78 (2d Cir. 2001) .......................................................... 15

*Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440 (S.D.N.Y. 2004) .............. 36, 38

*deMunecas v. Bold Food, LLC*, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ........................ 48

*Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) ........................... 51

*Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231 (E.D.N.Y. 2010) .............................. 33

*Elliot v. Leatherstocking Corp.*, 2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012) ......................... 51

*Ferrare v. IDT Energy, Inc.*, No. 140301717 (Pa. Ct. Com. Pl. Philadelphia County) ............. 1, 7

*Ferrare v. IDT Energy, Inc.*, No. 14 Civ. 4658 (E.D. Pa.) ................................................ 1, 7, 39

*Ferrington v. McAfee, Inc.*, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) .................................. 22

*Flores v. Anjost Corp.*, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) .......................................... 25

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .............................................. 18

*Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .................. 38

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).......................... 31, 35, 46

*Gonzalez v. Pritzker*, 2016 WL 5395905 (S.D.N.Y. Sept. 20, 2016)........................................... 17

*Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) ...................... 23

*Hayes v. Harmony Gold Min. Co. Ltd.*, 509 Fed. Appx. 21 (2d Cir. 2013)............................ 17, 38

*Hayes v. Harmony Gold Mining Co.*, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011)................... 38

*Hernandez v. Merrill Lynch & Co., Inc.*, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) .32, 44, 48

*Hicks v. Stanley*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)............................................ 35, 45

*Hubbard v. Donahoe*, 2013 WL 3943495 (D.D.C. July 31, 2013) ............................................. 37

*In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396 (E.D.N.Y. 1985)......................... 29

*In re Abrams & Abrams, P.A.*, 605 F.3d 238 (4th Cir. 2010)..................................................... 46

*In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001)
.................................................................................................................................... 20

*In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000).... 15, 18, 21, 24, 27

*In re Brown Co. Sec. Litig.*, 355 F. Supp. 574 (S.D.N.Y. 1973)................................................ 41

*In re China Sunergy Sec. Litig.*, 2011 WL 1899715 (S.D.N.Y. May 13, 2011).................... 49, 50

*In re Converse Tech., Inc. Sec. Litig.*, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)............... 48

*In re Crazy Eddie Securities Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) .................................... 39

*In re Fab Universal Corp. Shareholder Derivative Litig.*, 2015 WL 7299773 (S.D.N.Y. Nov. 17, 2015) .................................................................................................................. 17, 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .... 45, 47, 48

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) .......................... 21

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................................................................................... 37

*In re Hi-Crush Partners L.P. Securities Litig.*, 14 WL 7323417 (S.D.N.Y. Dec. 19, 2014) . 19, 42

*In re HIKO ENERGY LLC, Energy Litigation*, (S.D.N.Y. May 9, 2016) ............ 16, 19, 21, 22, 23

*In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002).................... 42

*In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306 (E.D.N.Y. 2006) .................................. 15

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010)....................................18, 20, 38, 44

*In re Med. X-Ray*, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ................................................. 27

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ......................................................................................................................................... 50

*In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57 (S.D.N.Y. 1993)........................ 27

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998). ....................... 47

*In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ................................................................................................................................................. 48

*In re PaineWebber Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997) ................................ 21

*In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ................... 21, 24

*In re Polaroid*, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ............................................. 32, 51

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005)...................................................... 49

*In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ........ 23

*In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.*, 2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) ....................................................................... 50

*In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ............................................................................................................................ 33

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999)..........................................31

*In re Telik, Inc. Sec. Leg.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008).............................31, 42, 47, 48

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160 (S.D.N.Y. 1989) ..............................................................................................................................47

*In re Veeco Instruments*, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .........................31, 41, 50

*In re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. July 16, 2001) ..............................37

*In re Warnaco Group, Inc. Sec. Litig.*, 2004 WL 1574690 (S.D.N.Y. July 13, 2004)................45

*Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) .................................................................18

*Johnson v. Brennan*, No. 10 Civ. 4712 (KBF), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)...24

*Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241 (8th Cir. 1996) ...................................28, 37

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ..............................................................................................................................45

*Lopez v. Youngblood*, No. 07 Civ. 0474 (DLB), 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011). 37

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...... 20, 21, 31, 39, 45, 47

*Martens v. Smith Barney, Inc.,* 181 F.R.D. 243 (S.D.N.Y. 1998).................................................24

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ............................32, 36

*McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006).....................................................33

*McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806 (E.D. Wis. 2009) ...................36

*McLaughlin v. IDT Energy, Inc.*, No. 14 Civ. 04107 (E.D.N.Y.)........................................ 1, 6, 23

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009) .................................................16

*Missouri v. Jenkins*, 491 U.S. 274 (1989).....................................................................................47

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .............................................................................................................................38

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972) ......................................................................24, 28

*Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400 (W.D.N.Y. 2011)................................................24

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007)....................................................22

*Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) .........................................................24

*Poertner v. Gillette Co.*, 618 Fed. Appx. 624, (11th Cir. 2015) ..................................................22

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) .....................................................16

*Siler v. Landry's Seafood House-North Carolina, Inc.*, 2014 WL 2945796 (S.D.N.Y. June 30, 2014) ..................................................................................................................................23

*Silverstein v. AllianceBernstein, L.P.*, 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013)................20

*Spicer v. Pier Sixty LLC*, 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012)....................................48

*Steiner v. Williams*, 2001 WL 604035 (S.D.N.Y. May 31, 2001) ..............................................31

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .........................................................19

*TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456 (2d Cir. 1982) .........................................21

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)..............................................................................................28

*Torres v. Gristede's Operating Corp.*, 519 F. App'x 1 (2d Cir. 2013) ................................. 26, 37

*Torres v. Gristede's Operating Corp.*, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010)...............26

*Torres v. Gristede's Operating Corp.* 2013 WL 2257859 (2d Cir. May 22, 2013)...................28

*Touhey v. United States*, 2011 WL 3179036 (C.D. Cal. July 25, 2011).....................................22

*Trustees v. Greenough*, 105 U.S. 527 (1881)...........................................................................31

*Viafara v. MCIZ Corp.*, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) .................................. 50, 51

*Velez v. Novartis Pharm. Corp.* 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010).........................36

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).............. 15, 24, 31, 32, 35

*Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ...........................................................14

*Williams v. First National Bank*, 216 U.S. 582, 595 (1910).......................................................14

*Willix v. Healthfirst, Inc.* 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...........................27, 32, 44

*Zeltser v. Merrill Lynch & Co., Inc.* 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ................... 48

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................... 29

Rule 23(c)(3) ............................................................................................. 29

Fed. R. Civ. P. 23(e)(2) ............................................................................... 15

**Treatises**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:6 (4th ed. 2002) ........... 36

7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 1797.1 (3d ed. 2005) ........................................................... 18

Manual for Complex Litigation, Fourth, § 21.71 ...................................... 37

Plaintiffs Louis McLaughlin, Anthony Ferrare, and Deborah Aks ("Plaintiffs" or "Named Plaintiffs") submit this memorandum of law in support of their motion for final approval of the class action settlement as set forth in the Settlement Agreement, dated June 26, 2017 (the "Settlement" or "Settlement Agreement") (Dkt. No. 98-1) pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), and (e); for named plaintiff service awards; and for attorneys' fees and expenses.

## INTRODUCTION

This motion pertains to three class actions (collectively, the "Actions") against Defendants IDT Energy, Inc., Genie Retail Energy, Genie Energy International Corporation, and Genie Energy LTD (collectively, "Defendants" or "IDT").[1]  Plaintiffs are IDT residential gas and electricity consumers.  IDT is an independent energy supply company (or "ESCO") that sells gas and electricity in deregulated markets across the United States.  The Actions challenge IDT's marketing, pricing, and rebate activities in New York, Pennsylvania, and New Jersey.  Plaintiffs commenced these class actions against IDT on behalf of themselves and all others similarly situated seeking economic and prospective relief.

---

[1] On July 2, 2014, Plaintiff Louis McLaughlin filed the instant action against Defendants in the United States District Court for the Eastern District of New York.  *See McLaughlin v. IDT Energy et al.*, No. 14 Civ. 4107, Dkt. No. 1 (E.D.N.Y. July 2, 2014).  On March 13, 2014, Plaintiff Anthony Ferrare filed suit against Defendant IDT Energy, Inc. in the Pennsylvania Court of Common Pleas of Philadelphia County.  *See Ferrare v. IDT Energy, Inc.*, No. 140301717 (Pa. Ct. Com. Pl. Philadelphia County Mar. 13, 2014).  On August 7, 2014, Defendant IDT Energy, Inc. removed the *Ferrare* action to the United States District Court for the Eastern District of Pennsylvania.  *See Ferrare v. IDT Energy, Inc.*, No. 14-4658, Dkt. No. 1 (E.D. Pa. Aug. 7, 2014).  On July 15, 2014, Plaintiff Deborah Aks filed suit against Defendant IDT Energy, Inc. in the Superior Court of New Jersey, Law Division, Essex County.  *See Aks v. IDT Energy, Inc.*, No. L-04936-14, Dkt. No. 1 (Super. Ct. N.J. Essex County Jul. 15, 2104).  The *Ferrare* action remains pending in the Eastern District of Pennsylvania, and the *Aks* action remains pending in the Superior Court of New Jersey.

Plaintiffs allege that IDT breached its contracts with consumers and made misleading misrepresentations contrary to its obligations under applicable laws. Plaintiffs allege that IDT's rates did not, as it claimed in its marketing materials, result in savings and were not, as it claimed in its marketing materials and consumer contracts, based on market factors. Instead, Plaintiffs allege that IDT's rates were higher than prevailing market rates and did not reflect the market because IDT's rates sometimes rose or remained steady when prevailing average market rates declined. Plaintiffs also allege that IDT's rebate program was misleadingly marketed to consumers and failed to provide consumers the full rebate amount required under its own terms. Defendants deny these allegations and contend (i) that their rates were adequately disclosed, reasonably related to the relevant markets for electric and gas service, and not in violation of the terms of any contract; and (ii) that their rebate program neither misled consumers, nor violated its own terms.

After hard-fought litigation in this Court and in two other related class action lawsuits in New Jersey and Pennsylvania that included extensive investigation, motion practice, and discovery—such as Defendants' multiple attempts to dismiss the actions, data analysis by Professor Frank Felder, the Director of the Center for Energy, Economic & Environmental Policy at the Rutgers University Edward J. Bloustein School of Planning and Public Policy, review of thousands of pages of Defendants' customer energy usage and cost documents, and two separate multiple-day mediations overseen by Diane Welsh, a former federal Magistrate Judge, and Peter Woodin, Esq., both highly-regarded JAMS mediators with extensive experience in consumer fraud class actions—Plaintiffs and Defendants agreed to a global settlement that will resolve all of the Actions. This Court granted preliminary approval of the Settlement on

October 16, 2017, certifying the Class for settlement purposes and authorizing the dissemination of Class notice.

Plaintiffs respectfully request that this Court now grant final approval. ***First***, the Settlement offers substantial benefits to Class members and avoids the delay, expense, and risks inherent in litigating class claims through trial and appeal. The Settlement's value for overcharges is estimated at between approximately $31,260,000.00 in cash payments and $54,600,000.00 in bill reductions to class members, depending on which payment option, cash or credit, claiming Class members selected, plus an additional estimated value of $10,000,000 set aside for rebates that were allegedly incorrectly calculated -- exclusive of attorneys' fees and expenses, and the cost of settlement administration.[2] *See* accompanying Declaration of Plaintiff McLaughlin's counsel Steven L. Wittels, ¶7 ("Wittels Dec."). As of March 30, 2017, more than 53,000 Class members had filed claims to share in the available benefits. *Id.*, ¶¶7–8.[3] Defendants agreed to pay attorneys' fees and costs and administration costs separate and apart from available monies to pay class claims, thereby not reducing the amounts claimed by class members. Based on the damages model prepared with the assistance of consulting energy expert Dr. Felder, Class Counsel estimated their best case total damages to approach $280,000,000. *Id.*

---

[2] The Settlement makes available an estimated $31,260,000.00 in cash payments or $54,600,000.00 in bill reductions to class members, plus an additional estimated $10,000,000.00 in cash for rebates that were allegedly incorrectly calculated. If the fee and expenses request of $4,290,000.00 and the cost of settlement administration of up to $895,000.00 are added as permitted by Second Circuit precedent, the total value of the Settlement is between $46,445,009.00 and $69,785,000.00.

[3] As Class Counsel Mr. Wittels elaborates in his Declaration, although many class members decided not to submit claims (i.e., approximately 3+% of the potential Class), this does not detract from the fact that the settlement made available to Class Members between $46–54 million. Wittels Dec. ¶¶7–8.

As such, the Settlement value represents as much as 17–25% of the total potential Class damage recovery, assuming Plaintiffs were to succeed in certifying a Class (and subsequently defeat Defendants' decertification motion), survive summary judgment, win at a trial, and then overcome the inevitable appeals. *Id.* **Second**, the Settlement was the product of arm's length negotiations aided by independent mediators and conducted by experienced counsel who obtained extensive formal and informal discovery in the Actions and, as such, were well-positioned to evaluate the strengths and weaknesses of the claims and defenses asserted, the potential damages incurred by the Class, and the fairness of the Settlement. **Third**, the positive response from the Class augurs in favor of approving the Settlement. As of March 30, 2018, only 15 of the approximately 1.8 million Class members (or 0.0000083% of the Class) had opted out, and there have been no objections to the Settlement. Wittels Dec. ¶6. The Settlement Administrator's help line received over 57,000 calls from Class members as of March 30, 2018. *Id.* During the nearly four month period for the submission of claims, Class Counsel has not received any report from the Claims Administrator of any Class members expressing reservations with any of the terms of the Settlement, including the service awards or Class Counsel's anticipated fee request. *Id.* ¶7. Thus, Plaintiffs hereby apply for the entry of an order that will certify the proposed Class and finally approve the Settlement. Plaintiffs will separately provide this Court with the proposed form of final Order approving the Settlement and dismissing the case, once the parties have had an opportunity to confer with the Court about certain procedural issues.

Class Counsel also moves for an award of attorneys' fees and expenses in the amount of $4,290,000.00. That amount is less than 10% of the lower $46 million estimate of the settlement's value, and well below the range of awards commonly approved within this Circuit.

*Id.* ¶29. IDT has agreed to pay an award the Court approves up to this requested amount, which payment is separate and apart from the benefit to be received by Class members and in no way diminishes their recovery. *Id.* ¶18. Indeed, if the Court were to deny the requested award for fees and expenses, in whole or in part, none of the amount IDT has agreed to pay Class Counsel would be paid to the Class. Rather, IDT's aggregate settlement costs would simply be reduced. Thus, barring Class Counsel from receiving the requested attorneys' fees and expenses would simply benefit IDT, without any offsetting gain to the Class. As the amount requested (i) has been agreed upon by the parties through arm's length negotiations; (ii) will not in any way diminish the recovery of the Class; (iii) falls well within the range of attorneys' fees and expenses awarded by courts within this Circuit using either the percentage of the fund or lodestar methodology; and (iv) was adequately disclosed in advance to the Class through various notices and not objected to, this Court should approve the requested attorneys' fees and expenses to compensate Class Counsel for the outstanding result achieved.

Class Counsel also requests that the Court approve the payment of Named Plaintiff Service Awards in the amount of $6,000.00 each to Plaintiffs Louis McLaughlin, Anthony Ferrare, and Deborah Aks to compensate them for their time and effort spent in assisting in the prosecution of the Actions on behalf of the Class. As with Class Counsel's fee request, the Service Award request was subject to arm's length negotiations between the parties, is comparable to other service award payments in other class actions, and was adequately disclosed in advance to the Class. *Id.* ¶20; *also see* IDT Settlement website: https://idtenergysettlement.com/Documents, Long Form Notice, no. 11 (last visited 4/2/18). IDT has agreed to pay the requested service awards the Court approves up to this requested amount,

which payment is separate and apart from the benefit to be received by Class members and in no way diminishes their recovery.

## BACKGROUND

## I. THE LITIGATION

Before bringing the instant action, Plaintiffs' counsel exhaustively investigated Plaintiffs' claims by communicating with Plaintiffs; reviewing their files; obtaining copies of the relevant contractual terms and conditions, as well as samples of Defendants' marketing materials; researching what causes of action to assert against IDT; and developing a theory of the case and the litigation strategy. *See* Wittels Dec. ¶4; Declaration of D. Greg Blankinship ("Blankinship Dec.") ¶ 2; the Declaration of Jonathan Shub ("Shub Dec.") ¶ 2; the Declaration of Matthew R. Mendelsohn ("Mendelsohn Dec.") ¶ 2; the Declaration of Matthew D. Schelkopf ("Schelkopf Dec.") ¶ 2; the Declaration of Troy M. Frederick ("Frederick Dec.") ¶ 2. They also identified the relevant energy markets and the rates available from local utilities and other independent energy suppliers or ESCOs. *See* Wittels Dec. ¶4; Blankinship Dec. ¶ 2; Shub Dec. ¶ 2; Frederick Dec. ¶ 2.

### A. The *McLaughlin* Action

On July 2, 2014, Plaintiff Louis McLaughlin filed the instant putative class action against IDT Energy, Inc. in the United States District Court for the Eastern District of New York. See *McLaughlin v. IDT Energy, Inc.*, No. 14 Civ. 04107, Dkt. No. 1 (E.D.N.Y.).

On April 10, 2015, IDT Energy moved to dismiss the *McLaughlin* action for failure to state a claim. *Id.*, Dkt. No. 26. On December 9, 2015, the Court denied the motion to dismiss. *See id.*, Minute Order dated Dec. 9, 2015. In January 2016, Plaintiff McLaughlin served an amended complaint naming Defendants Genie Retail Energy, Genie Energy International Corporation, and Genie Energy Ltd. (collectively the "Genie Entities") as direct defendants. *Id.*,

Dkt. No. 69.  Shortly thereafter, the parties briefed a second motion to dismiss.  *Id.*, Dkt.

Nos. 71–82.  On October 3, 2016, in light of the prospect of settlement, discussed *infra*, the

Court ordered the withdrawal of the pending motions to dismiss and stayed the action.  *See id.*,

Minute Order dated Oct. 3, 2016.

### B.    The *Ferrare* Action

On March 13, 2014, Plaintiff Anthony Ferrare initiated suit against Defendant IDT

Energy, Inc. in the Pennsylvania Court of Common Pleas of Philadelphia County.  *See Ferrare v.*

*IDT Energy, Inc.*, No. 140301717 (Pa. Ct. Com. Pl. Philadelphia County).  On August 7, 2014,

Defendant IDT Energy, Inc. removed the *Ferrare* action to the United States District Court for

the Eastern District of Pennsylvania.  *See Ferrare*, No. 14-4658, Dkt. No. 1 (E.D. Pa.).  On

October 1, 2014, Plaintiff Ferrare filed an amended complaint.  *Id.*, Dkt. No. 13.  On October 20,

2014, IDT filed a motion to stay or, alternatively, dismiss the amended complaint, which was

vigorously opposed.  *Id.*, Dkt. Nos. 19–21.  On April 8, 2015, while the motion was pending,

Plaintiff Ferrare petitioned to intervene in an action against IDT before the Pennsylvania Public

Utility Commission.  *Id.*, Dkt. No. 30.  On June 10, 2015, the court stayed the *Ferrare* action and

denied the motion to dismiss.  *See id.*, Dkt. Nos. 32–34.  The *Ferrare* action remains pending in

the Eastern District of Pennsylvania.  Shub Dec. ¶ 2.

### C.    The *Aks* Action

On July 15, 2014, Plaintiff Deborah Aks filed suit against Defendant IDT Energy, Inc. in

the Superior Court of New Jersey, Law Division, Essex County.  *See Aks v. IDT Energy, Inc.*,

No. L-04936-14, Doc. No. 1 (Super. Ct. N.J. Essex County).  On November 21, 2014, following

briefing on a motion to dismiss, the Court sustained Aks's claims for violation of New Jersey's

consumer protection statute, breach of contract, and unjust enrichment. *See id.*, Doc. No. 7 (copy

annexed as Exhibit 2 to the Blankinship Dec.).  On April 22, 2016, Plaintiff Aks filed an

amended complaint naming the Genie Entities as direct defendants. *Id.*, Doc. No. 18. The Genie Entities moved to dismiss the amended complaint and Plaintiff opposed. *Id.*, Doc. Nos. 20, 22. The Genie Entities' motion is currently stayed. The *Aks* action remains pending in the Superior Court of New Jersey. *See* Blankinship Dec. ¶¶ 2-3; Mendelsohn Dec. ¶¶ 2-3; Schelkopf Dec. ¶¶ 2-3.

### D. Mediation and Settlement

While litigating the Actions vigorously, the parties met telephonically and in person to discuss a comprehensive settlement of the claims of the Named Plaintiffs and the proposed class. *See* Blankinship Dec. ¶ 3; Wittels Dec. ¶ 5; Shub Dec. ¶ 3; Mendelsohn Dec. ¶ 3; Schelkopf Dec. ¶ 3; Frederick Dec. ¶ 3. Plaintiffs' counsel also met internally to review the strategy for and the status of settlement negotiations. *See* Blankinship Dec. ¶ 3; Wittels Dec. ¶ 5; Shub Dec. ¶ 3; Mendelsohn Dec. ¶ 3; Schelkopf Dec. ¶ 3; Frederick Dec. ¶ 3.

As a result of the extensive investigation, motion practice, and discovery conducted in the Actions, both sides were able to enter into settlement negotiations with an informed view of the strengths and weaknesses of their prospective cases, and with a basis for determining what form of monetary relief would be reasonable and appropriate in the settlement context. *See* Blankinship Dec. ¶ 3; Wittels Dec. ¶ 4; Shub Dec. ¶ 3.

Indeed, discovery in the Actions has been substantial. Defendants served interrogatories and document demands on Plaintiffs, who responded to the discovery, providing information regarding their purchases of electricity from IDT. *See* Blankinship Dec. ¶ 2; Wittels Dec. ¶ 4; Mendelsohn Dec. ¶¶ 2-3; Schelkopf Dec. ¶¶ 2-3. Plaintiffs also obtained Defendants' responses to their interrogatories and document demands, consisting of thousands of pages of documents. *See* Blankinship Dec. ¶ 2; Wittels Dec. ¶ 4; Mendelsohn Dec. ¶ 3; Schelkopf Dec. ¶ 4. Plaintiffs and Defendants exchanged letters identifying alleged deficiencies in discovery responses and

met and conferred on discovery issues. *See* Blankinship Dec. ¶ 3; Wittels Dec. ¶ 4; Shub Dec. ¶ 3; Mendelsohn Dec. ¶ 3; Schelkopf Dec. ¶ 3; Frederick Dec. ¶ 3. In the *Aks* action, IDT has deposed the plaintiff and Fed. R. Civ. P. 30(b)(6) depositions were taken of two IDT corporate representatives. *See* Blankinship Dec. ¶¶ 2-3; Mendelsohn Dec. ¶ 3; Schelkopf Dec. ¶¶ 2-3.

Moreover, as part of their investigation and in preparation for their class certification motion and for a trial on the merits, Plaintiffs also engaged the services of Dr. Frank Felder, who is the Director of the Center for Energy, Economic & Environmental Policy at the Rutgers University Edward J. Bloustein School of Planning and Public Policy. *See* Wittels Dec. ¶ 4; Blankinship Dec. ¶ 3; Shub Dec. ¶ 3; Mendelsohn Dec. ¶ 3; Schelkopf Dec. ¶ 3. Dr. Felder provided his expertise with respect to the manner in which IDT determined its rates, and assisted Plaintiffs in determining the extent to which IDT's rates were in excess of other ESCOs and local utilities. *See* Wittels Dec. ¶ 5; Blankinship Dec. ¶ 3; Shub Dec. ¶ 3; Mendelsohn Dec. ¶ 3; Schelkopf Dec. ¶ 3.

On December 10, 2015 the parties from all three pending actions against IDT participated in a mediation with former Magistrate Judge Diane Welsh. *See* Wittels Dec. ¶ 5. In preparation for the mediation, Defendants produced voluminous customer energy cost and pricing data. *Id.* The parties then exchanged documents and other data to assess the claims and defenses and to calculate potential damages in advance of the mediation. *Id.* Using the documents provided by Defendants and Plaintiffs' counsels' research and investigation, and in consultation with Professor Felder, Plaintiffs prepared and submitted a comprehensive confidential mediation brief. *Id.* In support of their position, Defendants also submitted a confidential mediation brief. *Id.* Unfortunately, the parties could not reach agreement at the initial mediation, and thereafter resumed litigation. *Id.*

After another year of litigation, on September 28, 2016, the parties participated in a second mediation, this time before Peter Woodin of JAMS.  *See* Wittels Dec. ¶ 5.  At the conclusion of the mediation the parties reached a memorandum of understanding.  *Id.* Thereafter, the parties continued with protracted negotiations over the material terms of the settlement, resulting in the Settlement Agreement being executed and effective on July 5, 2017. *Id.*  At all times, the parties' negotiations have been hard-fought, adversarial, and at arm's length. *Id.*

The parties recognize and acknowledge the benefits of settling these cases.  Plaintiffs believe that the claims asserted in this case have merit and that the evidence developed to date supports their claims.  Despite the strengths of their cases, Plaintiffs are mindful of the challenges to proof under, and possible defenses to, the claims in these matters. Plaintiffs further recognize and acknowledge the expense and length of time that proceedings necessary to prosecute this matter against IDT through trial, post-trial proceedings, and appeals would entail. Plaintiffs' counsel have taken into account the uncertain outcome and risks of the litigation, including IDT's ability to pay, as well as the difficulties and delays inherent in such litigation and the likelihood of protracted appeals.  They have, therefore, determined that the Settlement set forth in this Agreement is fair, reasonable, and adequate.  The Settlement confers substantial benefits upon, and is in the best interests of, the Plaintiffs and the Settlement Class.

IDT maintains that it has a number of meritorious defenses to the claims asserted in these actions.  Nevertheless, IDT recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations arising out of class action litigation.  IDT also recognizes the

risk that a trial on class-wide claims might present. Accordingly, IDT believes that the Settlement set forth in the Agreement is likewise in its best interests.

## II.    THE SETTLEMENT TERMS

The gravamen of Plaintiffs' claims is that IDT overcharged consumers for their residential gas and electricity after inducing them to switch to IDT via misleading statements, as well as failed to provide consumers the full rebate compensation promised for switching to IDT. IDT contends that its disclosures with regard to rates were accurate and not misleading, that its rates were commensurate with rates charged in the relevant markets and proper under its contractual terms, and that it provided the appropriate rebate amount to its customers.

In consideration of the Releases set forth in the Settlement Agreement, Class members who timely submit a valid "Claim Form" shall be entitled to a payment in the form of either: (i) a "Cash Settlement Payment," or (ii) a "Credit Settlement Payment."[4]

    i.    <u>Cash Settlement Payment</u>.  Class Members who are former or current customers and elect to receive a Cash Settlement Payment shall receive a one-time payment as follows:

        a.    Class Members who are Low Electric Usage Customers[5] shall receive $2.50 for each month of service, subject to a cap of 15 months.

        b.    Class Members who are High Electric Usage Customers[6] shall receive $3.50 for each month of service, subject to a cap of 15 months.

---

[4] Settlement Agreement, Dkt. No. 98-1, at 10-13.

[5] "Low Electric Usage Customers" means Class Members who receive or received electricity from Defendants whose per meter usage is less than 10,000 kWh a year, as reported by the local utility to Defendants at the time customer enrollment. *Id.* at 6.

[6] "High Electric Usage Customers" means Class Members who receive or received electricity from Defendants whose per meter usage is equal to or greater than 10,000 kWh a year, as reported by the local utility to Defendants at the time of customer enrollment. *Id.* at 5.

     c.      Class Members who are Low Gas Usage Customers[7] shall receive $0.75 for each month of service, subject to a cap of 15 months.

     d.      Class Members who are High Gas Usage Customers[8] shall receive $1.00 for each month of service, subject to a cap of 15 months.

*By way of example, if a Class Member was a High Electric Usage Customer for 15 months and a High Gas Usage Customer for 14 months, the Cash Settlement Payment shall be calculated as: (15 X $3.50) + (14 X $1) = $66.50.*

     e.      In addition to the payments provided for above, if a Class Member: (i) elects to receive the Cash Settlement Payment; (ii) is a Rebate Customer; and (iii) is not a Rebate Recalculation Customer, such Class Member shall receive an additional $1.00 payment.

ii.    <u>Credit Settlement Payment</u>.  Class Members who are customers of Defendants as of the deadline to file a claim may elect to receive a Credit Settlement Payment and shall receive a credit on Defendants' supply charge to the Class Members' future energy bills as follows:

     a.      Class Members who are Low Electric Usage Customers shall receive a credit of $4.25 for each month of service, subject to a cap of 20 months.

     b.      Class Members who are High Electric Usage Customers shall receive a credit of $5.25 for each month of service, subject to a cap of 20 months.

     c.      Class Members who are Low Gas Usage Customers shall receive a credit of $1.70 for each month of service, subject to a cap of 20 months.

     d.      Class Members who are High Gas Usage Customers shall receive a credit of $2.10 for each month of service, subject to a cap of 20 months.

*By way of example, if a Class Member was a High Electric Usage Customer for 19 months and a High Gas Usage Customer for 18 months, the Credit Settlement Payment shall be calculated as: (19 X $5.25) + (18 X $2.10) = $137.55.*

---

[7] "Low Gas Usage Customers" means Class Members who receive or received natural gas service from Defendants whose per meter usage is less than 1,000 therms/ccfs a year, as reported by the local utility to Defendants at the time customer enrollment.  *Id.* at 6.

[8] "High Gas Usage Customers" means Class Members who receive or received natural gas service from Defendants whose per meter usage is equal to or greater than 1,000 therms/ccfs a year, as reported by the local utility to Defendants at the time customer enrollment.  *Id.* at 5.

e.    In addition to the credits provided for above, if a Class Member (i) elects to receive the Credit Settlement Payment, (ii) is a Rebate Customer,[9] and (iii) is not a Rebate Recalculation Customer,[10] such Class Member shall receive an additional $2.00 credit on Defendants' supply charge to the Class Member's future energy bills.

iii.   <u>Rebate Recalculation Customers</u>. A Class Member who is a Rebate Customer that was entitled to receive a cash rebate from Defendants shall have the right to elect to have the rebate recalculated. Any Class Member who makes such election shall:

a.    <u>not</u> receive the additional $2.00 credit provided or the additional $1.00 cash payment provided for above; and

b.    have their rebate recalculated by Defendants according to the following formula:
The sum of:

    1.   the customer's actual electric usage for each complete 12-month period following the customer's enrollment multiplied by 1 cent per kWh, <u>plus</u>

    2.   the customer's actual gas usage for each complete 12-month period following the customer's enrollment multiplied by 3 cents per therm, <u>less</u>

    3.   all cash rebates actually paid to the customer.

c.    To the extent the recalculated rebate is a positive number, the Rebate Recalculation Customer shall receive a cash payment in the amount of that positive number.

d.    To the extent the recalculated rebate is zero or a negative number, the Rebate Recalculation Customer shall receive no payment other than those set forth above.

Defendants have also agreed to pay Plaintiffs' attorney fees and costs in an amount to be approved by the Court of up to $4,290,000.00, as well as Named Plaintiff Service Awards in an

---

[9] "Rebate Customer" means Class Members who participated in any of Defendants' rebate, refund or gift programs during the Class Period. *Id.* at 6.

[10] "Rebate Recalculation Customer" means a Class Member who is a Rebate Customer entitled to receive a cash rebate from Defendants that elects to have their rebate recalculated. *Id.* at 12.

amount to be approved by the Court of up to $6,000.00 each.[11]  Additionally, separate and apart

from paying the sums described above, Defendants will also pay the costs of notice to the

Settlement Class and the cost of settlement and claims administration as set forth in the

Settlement Agreement.[12]

In return for making these settlement benefits available to all Settlement Class members,

the Settlement Class members' claims against Defendants will be dismissed with prejudice and

all Settlement Class members (other than those who opt-out of the Settlement Class) will release

and be permanently barred from pursuing any claims in accordance with the provisions of the

Settlement Agreement.[13]

## ARGUMENT

### I.      STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT

Strong judicial policy favors the settlement of class actions.  *See Weinberger v. Kendrick*,

698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of

litigation and related expenses, for the general policy favoring the settlement of litigation.")

(citing 3 Newberg, Class Actions § 5570c, at 479–80 (1977); *Williams v. First National Bank*,

216 U.S. 582, 595 (1910)).  "Class action suits readily lend themselves to compromise because

of the difficulties of proof, the uncertainties of the outcome, and the typical length of the

litigation.  There is a strong public interest in quieting any litigation; this is particularly true in

---

[11] *Id.* at 3–4.

[12] *Id.* at 9.

[13] *Id.* at 15.

class actions." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations and internal quotation marks omitted).

Courts assess proposed class action settlements to determine whether they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, courts must determine whether both the negotiating process leading to a settlement and the settlement itself are fair, adequate and reasonable. *See D'Amato v. Deutsche Bank*, 235 F.3d 78, 85 (2d Cir. 2001). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

The Second Circuit identified nine factors in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462–63 (2d Cir. 1974) that district courts should consider in evaluating a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In this case, each of the nine *Grinnell* factors weighs in favor of granting final approval of the Settlement.

## II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

In a case that is on all fours, Judge Briccetti of the Southern District of New York approved a similar claims-made class settlement. *See* Final Approval Order, *In re HIKO ENERGY LLC, Energy Litigation*, No. 14 Civ. 1771 (VB) ("*In re HIKO*"), Dkt. No. 93

(S.D.N.Y. May 9, 2016); Tr. of Final Approval Hearing, *In re HIKO* (S.D.N.Y. May 9, 2016) (the "*HIKO* Trans.") (copy annexed as Exhibit B to the Wittels Dec.).  In *In re HIKO*, a consolidated action, the plaintiffs alleged essentially identical claims against another ESCO based on its marketing and rate-setting policies.  *See* Memorandum of Law in Support of Uncontested Motion for Final Approval of Class Action Settlement, Attorneys' Fees and Expenses, and Named Plaintiffs' Enhancement Awards at 1, *In re HIKO*, Dkt. No. 82 (S.D.N.Y. Apr. 25, 2016).  Like the parties in the instant case, the parties in *In re HIKO* reached a settlement after substantial discovery and mediation, and Judge Briccetti granted final approval, finding that the settlement was both procedurally and substantively fair.  *See HIKO* Trans. at 11:17-20:12.  Just as in *In re HIKO*, the Settlement here is fair, reasonable, and adequate, both procedurally and substantively, and warrants final approval by this Court.

> **A.**     **The Settlement Is Procedurally Fair.**

A class settlement is presumed to be fair, adequate, and reasonable where it is "reached in arm's-length negotiation between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–4 (2d Cir. 2009) (citations and internal quotation marks omitted); *see also HIKO* Trans. at 12:2-5 ("[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 217 (S.D.N.Y. 2015) ("A proposed settlement is procedurally fair when it is reached through arm's length negotiations between experienced, capable counsel and after meaningful discovery." (citations and internal quotation marks omitted)).  In determining whether a settlement is procedurally fair, courts evaluate the "negotiating process, to ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel

have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Deutsche Bank*, 236 F.3d at 84.

This Settlement, reached as a result of arm's length negotiation after protracted, hard-fought litigation and two mediations, meets the standard for procedural fairness. "The parties are represented by experienced counsel, supporting a conclusion that the settlement negotiations were based on informed judgments as to the merits of the claims and defenses." *In re Fab Universal Corp. Shareholder Derivative Litig.*, No. 14 Civ. 687 (RWS), 2015 WL 7299773, at *2 (S.D.N.Y. Nov. 17, 2015) (finally approving settlement). Plaintiffs' counsel in this case were well-positioned to make informed judgments about the strengths and weaknesses of Plaintiffs' claims due to the thorough discovery in the Actions, as well as their extensive experience and knowledge in the area of complex and class action litigation. *See* Blankinship Dec. ¶ 4 and Exhibit 1; Wittels Dec. ¶ 5 and Exhibit A; Shub Dec. ¶¶ 4-5 and Exhibit A; Mendelsohn Dec. ¶¶ 4-5 and Exhibit A; Schelkopf Dec. ¶¶ 4-5 and Exhibit A; Frederick Dec. . ¶¶ 4-5 and Exhibit A. Moreover, independent and experienced mediators—former Magistrate Judge Diane Welsh and Peter Woodin of JAMS—conducted neutral settlement negotiations. *See HIKO* Trans. at 12:23–13:7 (finding settlement "was reached through arm's-length negotiations" because "[a]n independent and experienced mediator . . . conducted a day-long mediation session which resulted in the settlement" and "the participation of a respected and neutral mediator gives the Court confidence that the negotiations were conducted in an arms-length, noncollusive manner"); *Hayes v. Harmony Gold Min. Co. Ltd.*, 509 Fed. Appx. 21, 23 (2d Cir. 2013) (unpublished) (finally approving class settlement over objection of class representative because "the proposed settlement, on terms recommended by an independent and experienced mediator, was procedurally and substantively fair"); *Gonzalez v. Pritzker*, No. 10 Civ. 3105 (FM), 2016 WL 5395905, at *3 (S.D.N.Y. Sept. 20, 2016) (granting final

approval and noting that "[t]he assistance of an experienced mediator in the settlement process []
confirms that the settlement is not collusive."); *In re Fab Universal*, 2015 WL 7299773, at *2 ("The
Proposed Settlement was the product of extensive formal mediation aided by a neutral JAMS
mediator, hallmarks of a non-collusive, arm's-length settlement process."). And "[t]he Settlement
was not conditioned on the approval of Counsel's fee award request, further evidencing arm's-length
negotiations." 2015 WL 7299773, at *2. Therefore, this Court should find that the Settlement is
procedurally fair.

### B.     The Settlement Is Substantively Fair.

The Second Circuit's *Grinnell* factors guide this Court's decision regarding whether to
approve the Settlement. "In finding that a settlement is fair, not every factor must weigh in favor
of settlement, rather the court should consider the totality of these factors in light of the
particular circumstances." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010)
(internal quotation marks and citations omitted). "The weight given to any particular factor will
vary based on the facts and circumstances of the case." *Ingles v. Toro*, 438 F. Supp. 2d 203, 211
(S.D.N.Y. 2006) (citing 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal
Practice and Procedure: Civil § 1797.1, at 77 (3d ed. 2005)). Here, the *Grinnell* factors weigh
heavily in favor of final approval of the proposed Settlement.

### 1.     The Actions Are Complex and Will Be Expensive and Lengthy.

The Settlement Agreement provides substantial monetary benefits to the Settlement Class
while avoiding the significant expenses and delays attendant to discovery and motion practice
related to summary judgment and class certification. Indeed, "[m]ost class actions are inherently
complex and settlement avoids the costs, delays and multitude of other problems associated with
them." *In re Austrian and German Bank*, 80 F. Supp. 2d at 174; *Frank v. Eastman Kodak Co.*,
228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) (same). Here, the Settlement Class includes all

current and former customers of IDT during the Class Period (from July 8, 2008, up to and including the Preliminary Approval Date—October 16, 2017). Continued litigation would necessitate motions for class certification and for summary judgment, and potentially trial. Engaging in motion practice under the consumer protection laws of three different states would be extremely time-consuming and expensive.

Simply completing discovery, including subsequent expert reports and potential disputes, would result in the expenditure of substantial time and expense by the parties. Indeed, continued litigation would necessitate numerous depositions of Plaintiffs and Defendants' personnel, as well as expert witnesses.

Absent approval, the continued litigation of the Actions will also burden the three different courts hearing these cases. The resulting fact-intensive trials will result in significant expenses to the parties. Any judgment will likely be appealed, extending the costs and duration of the Actions. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the Settlement Class, providing important relief to consumers of Defendants' products. *See HIKO* Trans. at 16:1-8 ("Class certification and discovery would be complicated and time-consuming, especially because experts will need to be engaged and deposed. Forcing plaintiffs to wait until after trial and any associated appeals for a potential resolution would likely delay any recovery by years. In contrast, the proposed settlement would grant relief to all class members without subjecting them to the risks, complexity, duration, and expense of continuing litigation."); *In re Hi-Crush Partners L.P. Securities Litig.*, No. 12 Civ. 8557 (CM), 2014 WL 7323417, at *6 (S.D.N.Y. Dec. 19, 2014) ("[T]he Settlement offers the opportunity to provide definite recompense to the Class now—making the instant Settlement a particularly valuable 'bird in the hand.'"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003)

("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Thus, this factor weighs in favor of approving the Settlement. *See In re Marsh*, 265 F.R.D. at 138-39 ("[E]ven if the Class were to win a judgment at trial, the additional delay of trial, post-trial motions and appeals could deny the Class any actual recovery for years, further reducing its value.").

**2. The Reaction of the Class Was Overwhelmingly Positive.**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citation omitted)). There is a "strong indication of fairness" where the "vast majority of class members neither objected nor opted out." *Silverstein v. AllianceBernstein, L.P.*, No. 09 Civ. 05904 (LGS), 2013 WL 7122612, at *5 (S.D.N.Y. Dec. 20, 2013) (citation omitted).

Here, Class member response to the Settlement was overwhelmingly positive.

First, as of March 30, 2018, the Claims Administrator Rust Consulting reported that only 15 Class members opted out of the Settlement, and no Class member has objected. Wittels Dec. ¶ 7. Moreover, the Claims Administrator has received over 57,000 calls from Class members as of March 30, 2018, yet Class Counsel received no word from the Claims Administrator that any Class members expressed reservations about the amounts indicated in the Settlement, including Class Counsel's anticipated fee request. *Id.* ¶17. That there were a *de minimus* number of opt-

outs and no objections is especially noteworthy, as "the notice and approval process generally solicits negative feedback regarding a settlement, because it is designed to solicit opt outs and objections by advising class members of the procedures and deadlines for filing such responses with the court. . . . [I]n litigation involving a large class, such as that here, it would be extremely unusual not to encounter objections." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012) (internal quotation marks and citations omitted); *see also* HIKO Trans. at 16:9-16 (finding that "reaction of the class as a whole supported approval" because "[t]he low number of objectors and opt-outs"—only one objector and 108 opt outs out of roughly 186,000 class members—"indicates that the proposed settlement is fair"). "In fact, the lack of objections may well evidence the fairness of the Settlement." *Maley*, 186 F. Supp. 2d at 362 (citing *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)); *In re Austrian and German Bank*, 80 F. Supp. 2d at 175 ("If only a small number of objections are received [18 objections in a class of 27,833 class members], that fact can be viewed as indicative of the adequacy of the settlement"). And courts routinely find that the reaction of the class is positive and weigh this factor in favor of approval even when there are more objections and opt-outs. *See, e.g.*, *Charron*, 874 F. Supp. 2d at 196 (118 objectors from a class of 22,000); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004) (noting that there were 12 objectors and 9 opt-outs from a class of a million and holding that "[t]hese extremely low numbers of objectors and opt-outs strongly support settlement approval.").[14]

---

[14] In fact, courts in this District have approved settlements even when a majority of the class objected. *See, e.g.*, *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1325 (2d Cir. 1990) (approving settlement where "a majority" of class objected); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982) (between 54 and 58 percent of class objected).

Second, "the prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent." *Ferrington v. McAfee, Inc.*, No. 10 Civ. 1455 (SGW) (JGW), 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012). Here, as of March 30, 2018, Rust reported that 53,121 class members (approximately 3.3% of the Class) submitted claims, with some additional claims expected as the April 5, 2018 deadline. Wittels Dec. ¶ 7. In *In re HIKO*, the court approved a claims-made class settlement with a similar claims rate. *See HIKO* Trans. at 6:4–9:25 (noting that 6,213 claims out of 185,593-member class—or a claims rate of 3.34%—was "within the normal range in class action settlements of this type" and granting motion for final approval); Final Approval Order at 3–4, *In re HIKO*, Dkt. No. 93 (S.D.N.Y. May 9, 2016) (finally approving settlement, finding that the "notice, opt-out and claims submission procedures . . . fully satisfy Rule 23 . . . and the requirements of due process" and that the settlement was "fair, reasonable, and adequate").

Indeed, courts have approved claims-made class settlements where the claims rate was even lower. *See, e.g.*, *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 625–26 (11th Cir. 2015) (unpublished) (approving 7.26 million-member settlement class when just 55,346—less than 1%—filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000—approximately 1.1%—filed claims); *Touhey v. United States*, No. 08 Civ. 1418 (LDW), 2011 WL 3179036, at *7–8 (C.D. Cal. July 25, 2011) (finding a 2% response rate acceptable—38 responses out of 1,875 notices mailed—where there were no objections and the overall recovery was fair and reasonable); *Arthur v. SLM Corp.*, No. 10 Civ. 198 (W.D. Wash. Aug. 8, 2012), Dkt. No. 249 at 2-3 (claims rate of approximately 2%). Although courts look to the claims rate to gauge class reaction to a proposed settlement, "[t]he question for the Court at the Final Fairness Hearing

stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." *Hamilton v. SunTrust Mortg. Inc.*, No. 13 Civ. 60749 (JIC), 2014 WL 5419507, at *5 (S.D. Fla. Oct. 24, 2014).

The small number of opt-outs and absence of objections, coupled with a claims rate typical of consumer class actions, weighs heavily in favor of the Settlement.

### 3. The Current Stage Of the Instant Litigation And the Extensive Discovery that Has Occurred Favor Final Approval.

The Actions have been pending for years.[15] The legal issues in this case have been thoroughly vetted. Plaintiffs and Defendants have engaged in discovery as well as arm's-length negotiations through experienced mediators. In the mediations, the parties exchanged briefs and research. Each side has a thorough understanding of the case; Plaintiffs' counsel conducted a thorough investigation of Plaintiffs' claims, and Defendants' counsel did so as well. "[F]ormal discovery is not a prerequisite. The question is whether the parties had adequate information about all their claims." *HIKO* Trans. at 17:2-4 (granting final approval); *see also In re Sinus Buster Prods. Consumer Litig.*, No. 12 Civ. 2429 (KHV), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) ("To satisfy this factor, the parties 'need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the settlement.'" (internal quotation marks and citations omitted)); *Siler v. Landry's Seafood House-North Carolina, Inc.*, No. 13 Civ. 587 (RLE), 2014 WL 2945796, at *6 (S.D.N.Y. June 30, 2014) (holding that this factor may be satisfied through

---

[15] *Ferrare* was initially filed in March 2014, and *McLaughlin* and *Aks* were initially filed in July 2014.

"an efficient, informal exchange of information" and "participation in a settlement conference");

*Johnson v. Brennan*, No. 10 Civ. 4712 (KBF), 2011 WL 4357376, at *9 (S.D.N.Y. Sept. 16,

2011) (granting final approval where parties engaged in informal discovery and no depositions

were taken); *In re Austrian and German Bank*, 80 F. Supp. 2d at 176 ("'To approve a proposed

settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is

enough for the parties to have engaged in sufficient investigation of the facts to enable the Court

to intelligently make . . . an appraisal of the Settlement.' Additionally, 'the pretrial negotiations

and discovery must be sufficiently adversarial that they are not designed to justify a

settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.'"

(citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) and quoting *Martens v. Smith

Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998))). Plaintiffs' counsel are well-positioned to

evaluate the merits of the Actions. Given the extent of motion practice and discovery that

preceded and informed the settlement negotiations, final approval of the Settlement is warranted.

### 4. Plaintiffs Face Substantial Hurdles In Establishing Liability.

The Settlement Agreement should be approved because while Plaintiffs are confident in

their ability to prove their cases, substantial hurdles in establishing liability remain. Indeed,

"[l]itigation inherently involves risks." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D.

at 126 (approving settlement); *see also Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 412

(W.D.N.Y. 2011) (approving settlement and recognizing "the concomitant risks and costs

necessarily inherent in taking any litigation to completion" (citing *Newman v. Stein,* 464 F.2d

689, 693 (2d Cir. 1972))). "Establishing liability [is] no sure thing for the plaintiffs." *Wal-Mart*,

396 F.3d at 118 (affirming final approval of class settlement). The "primary purpose of

settlement is to avoid the uncertainty of a trial on the merits." *Flores v. Anjost Corp.*, No. 11

Civ. 1531, 2014 WL 321831, at *5 (S.D.N.Y. Jan. 29, 2014) (granting final approval to class settlement) (citations omitted).

First, Defendants argue that that IDT's disclosures with regard to rates were not misrepresentative and that they sufficiently disclosed the variable nature of the rates and how the rates would be calculated. Second, Defendants argue that the language in their contract is not ambiguous and that the rates charged by IDT are not in violation of the contract. Third, to the extent there is ambiguity in the contract, Defendants argue that their actions did not violate any obligation of good faith and fair dealing. Fourth, Defendants argue that IDT's disclosures regarding the rebate program were not misleading. Fifth, Defendants argue that piercing the corporate veil between the Defendants is unwarranted. If Defendants can prove any of these claims, establishing liability will be quite difficult.

Plaintiffs' counsel are confident in their ability to prove Plaintiffs' case. Nonetheless, the Settlement Agreement avoids the risks inherent in further litigation, and therefore this factor weighs in favor of approval of the Settlement.

### 5.      Plaintiffs Face Substantial Hurdles In Proving Damages.

In order to prove damages, Plaintiffs must prove that Defendants' rates are not competitive or commensurate with those otherwise available in the relevant markets; that Defendants' marketing materials represented falsely that they would be, and that the disclosures made by Defendants in connection with their marketing and contracts were insufficient. This is an expensive and challenging task. First, while Plaintiffs are confident that their expert can collect and collate pricing data in such a way that class and individual damages can be determined, that task is immense. Not only are there three states involved, but rates vary within states based on the local utility, and rates vary over time. Plaintiffs' expert therefore must collect

and collate data from Defendants with regard to IDT's rates *and* collect and collate data regarding the historical rates charged by local utilities and other ESCOs to identify the market rate. Thus, there are substantial obstacles Plaintiffs must overcome to prove damages in this case, a factor favoring final approval of the Settlement Agreement.

### 6. Maintaining the Class Action Through Trial May Be Challenging.

Plaintiffs are confident in their ability to maintain this action as a class through trial. Nonetheless, they recognize that there are substantial hurdles in being able to do so. Defendants will no doubt argue that differences between the advertisements preclude certification of a class and similarly dispute the extent to which those advertisements raise common questions of law and fact that predominate over individual issues, making the proposed settlement a fair and adequate alternative to continued litigation. Second, each Class member may have been damaged in differing amounts, depending on the amount of energy used, the supplier from which that Class member switched, and their geographic location. Thus, demonstrating that damages can be handled on a class-wide basis will be challenging (although Plaintiffs are confident that their expert can develop a data set demonstrating each Class member's damages). Plaintiffs would have to deal with these issues if and when they move to certify a class.

Moreover, even assuming Plaintiffs move for and obtain class certification, Defendants can always move to decertify the class, highlighting the inherent risks and expense of maintaining a class through trial. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) *aff'd,* 519 F. App'x 1 (2d Cir. 2013) ("The risk of maintaining class status throughout trial also weighs in favor of final approval. Defendant would likely move to decertify, requiring another round of briefing. Defendant may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). Settlement

eliminates the risk, expense, and delay inherent in this process."); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (same). The proposed Settlement avoids the risks inherent in further litigation, and therefore, this factor weighs in favor of final approval.

### 7. The Defendant May Not Be Able to Withstand a Substantially Greater Judgment.

The ability of Defendants to withstand a substantially greater judgment is by no means assured. While Plaintiffs have no concern that IDT has the ability to pay all claims made in the context of this Settlement Agreement, it is almost certain that IDT would not have been able to bear the large statutory and compensatory damages award that could be assessed were the case to proceed through trial. While a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair," here the fact that IDT could not have withstood a judgment in this case weighs in favor of approval. *In re Austrian and German Bank*, 80 F. Supp. 2d at 178 n.9.

### 8. The Settlement Amounts Are Reasonable In Light Of the Best Possible Recovery and In Light Of All the Attendant Risks Of Litigation.

The adequacy of a settlement amount offered should be judged "in light of the strengths and weaknesses of the plaintiff[s'] case." *In re Med. X-Ray*, No. 93 Civ. 5904 (CPS), 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998). That the settlement amount is less than the maximum potential recovery is not a barrier to approval. *See Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Indeed, judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693.

Here, there is a broad range of potential recovery if the case were to be litigated to judgment by trial. On the one hand, Plaintiffs could prevail on their claims and recover the difference in what Defendants charged for electricity and natural gas and what local utilities and ESCOs charged. In addition, New York consumers can receive a statutory penalty of $500.00 under G.B.L. § 349-d. Accordingly, statutory damages owed the Settlement Class could be substantial. On the other hand, Defendants could prevail on their legal arguments to defeat liability entirely, resulting in no recovery for Class members. Given this broad range of possible damages, a settlement worth between 31 and 54 if all claimants picked either the Cash Option or the Credit Option, plus the $10,000,000 million put aside for rebate claims, the $4,290,000.00 reserved for attorneys' fees and expenses, and the cost of settlement administration, falls well within the range that courts have traditionally found to be fair and adequate under the law.[16]

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval of the Settlement. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he

---

[16] In a "constructive fund" case such as this, it is appropriate to add the amount made available to the class to the fees requested to determine the value of the total fund for purposes of determining the percentage of the fund the fee request represents. *See, e.g.*, *Torres v. Gristede's Operating Corp.*, No. 12 Civ. 3336 (PAC), 2013 WL 2257859, at *3 (2d Cir. May 22, 2013); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); Manual for Complex Litigation, Fourth, § 21.71 p. 525 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class . . . "). *See also* V.D.2, *infra*.

proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road.  Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (modified on other grounds)).  Therefore, these factors weigh in favor of finally approving the Settlement.

## III.    NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER.

Rule 23(c)(2)(B) requires that Class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).  *Id*.

Here, the Court approved "the form and content of the proposed Postcard Settlement Notice and Long Form Notice (collectively, 'Class Notice') and approve[d] the parties' proposal to distribute the Postcard Settlement Notice by U.S. Mail and the Long Form Notice via the Internet."  Dkt. No. 103 at 3.  The Court further found that "the parties' proposal regarding notice to the Class constitutes the best notice practicable under the circumstances, and complies fully with the notice requirements of due process and Fed. R. Civ. P. 23."  *Id.* at 3.

Pursuant to the schedule approved by the Court for the dissemination of the Class Notice, the Settlement Administrator mailed the Postcard Settlement Notice to Class members on December 10, 2017, after confirming and updating the mailing addresses using the National Change of Address database, and re-mailed notices returned undeliverable after conducting a one-time skip trace. *See* accompanying Certificate of Compliance with Notice Provision of Settlement Agreement dated March 28, 2018 by Jason Stinehart, a Program Manager at Rust Consulting, the Claims Administrator. The Settlement Administrator also established a website containing all the information required by this Court and a dedicated toll-free phone number for inquiries from Class members. *Id.*.

As the Class Notice was disseminated in strict compliance with this Court's directives, this Court should grant final approval of the Settlement.

## IV. THE COURT SHOULD CERTIFY THE CLASS.

Plaintiffs moved to preliminarily certify the Class for settlement purposes, and the Court granted the motion on October 16, 2017. *See* Dkt. Nos. 98–99 & 103 and Minute Entry dated Oct. 16, 2017. For the reasons stated in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 99 at 8–17), this Court should certify the Class.

## V. THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES TO BE PAID BY DEFENDANTS TO CLASS COUNSEL.

IDT has agreed to pay Class Counsel up to $4,290,000.00 in attorneys' fees, costs, and other litigation expenses, which amount is separate and apart from the benefit to be received by Class members. Any reduction in the amount requested by Class Counsel will not increase the Class members' recovery but will decrease the aggregate amounts to be paid by Defendants in

the Settlement. As set forth more fully below, Class Counsel's proposed $4,290,000.00 award for fees and expenses merits approval.

###     A.     Class Counsel Is Entitled To Compensation.

For more than a century, the Supreme Court has held that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury," the attorney is entitled to a reasonable fee. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Trustees v. Greenough*, 105 U.S. 527 (1881); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)). Awarding Class Counsel fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their individual claims." *Steiner v. Williams*, No. 99 Civ. 10186 (JSM), 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001). Indeed, the contingency fee awarded to Class Counsel should be greater than the fees that the same attorneys would charge their clients in non-contingency cases. "No one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999); *In re Veeco Instruments*, No. 05 MD 01695 (CM) (GAY), 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) (same).[17]

District courts in the Second Circuit may award attorneys' fees to prevailing class counsel under either a "percentage of the fund" or "lodestar" method to compute fees in common fund cases. *See Wal-Mart*, 396 F.3d at 121; *In re Polaroid*, No. 03 Civ. 8335 (WHP), 2007 WL

---

[17] *In re Telik, Inc. Sec. Leg.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) ("Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." (citing *Maley*, 186 F. Supp. 2d at 369)).

2116398, at *2 (S.D.N.Y. July 19, 2007). However, "[t]he trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 121; *see also Polaroid*, 2007 WL 2116398, at *2. In addition, the award must be based on "the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007).

Under either method, Class Counsel's proposed $4,290,000.00 award for fees and expenses, representing between 6% and 9% of the total value of Settlement under the Credit Option and Cash Option, respectively (Wittels Dec. ¶ 29), merits approval and falls well within the range of class counsel fees approved in comparable cases using either method. *See, e.g.*, *Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836 (RWS) (RLE), 2013 WL 1803736, at *12 (S.D.N.Y. Apr. 29, 2013) (awarding 33% of $4.9 million settlement holding "[t]his case does not require a 'sliding scale' approach to prevent a windfall because the requested amount is consistent with the norms of class litigation in this circuit."); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (awarding "$2,310,000 which is 33% of the settlement fund"); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (awarding fees of 33% of $6 million settlement fund); *Willix*, 2011 WL 754862, at *6 (awarding "$2,558,333 in attorneys' fees or one third (33 1/3%) of the Fund").

**B.      Defendants Will Pay Class Counsel's Fees At No Cost To the Class.**

Before applying either method, it is important to recognize that IDT has agreed to pay Class Counsel's fees from its own resources. As a result, the fee award will have no impact whatsoever on the benefit afforded to the Class members. When the settling defendant agrees to pay class counsel's fees from its corporate treasury, independent of the benefit obtained for the class, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *McBean v. City of New York*, 233

F.R.D. 377, 392 (S.D.N.Y. 2006); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010). Here, IDT has agreed to pay Class Counsel's fees and expenses in an amount not to exceed $4,290,000.00. As a result, the fee award will not diminish the benefits provided to the Class members. "Thus regardless of the size of the fee award, class members . . . will receive the same benefit; the fee award does not reduce the recovery to the class. Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008). Courts have commended the payment of class counsel fee awards by the defendant, rather than the class members.[18]

Moreover, a fee negotiated between the parties is preferable because, as a market-set price resulting from opposing interests, it is the most accurate method of determining an appropriate fee. Defendants had an interest in minimizing the fee, Class Counsel had an interest in maximizing it, and the negotiations were informed by the parties' knowledge of the work done and result achieved and their views on what the court might award if the matter were litigated.[19] In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the Court of Appeals for the Second Circuit concluded that courts should be hesitant to interfere in fee arrangements between the plaintiffs

---

[18] *See e.g.*, *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (noting "with approval that the fee award will not be drawn from the common fund but will be paid directly by [defendant]. In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members."); *Cavalieri v. General Elec. Co.*, No. 06 Civ. 315 (GLS) (DRH), 2009 WL 2426001, at *3 (N.D.N.Y. Aug. 6, 2009) (same).

[19] The Federal Rules of Civil Procedure expressly authorize the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("The agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration . . . .").

and the defendants when the defendants have agreed not to oppose the payment of fees up to a

certain amount:

> [W]here . . . the amount of the fees is important to the party paying them, as well
> as to the attorney recipient, it seems to the author of this opinion that an agreement
> "not to oppose" an application for fees up to a point is essential to completion of
> the settlement, because the defendants want to know their total maximum exposure
> and the plaintiffs do not want to be sandbagged.  It is difficult to see how this could
> be left entirely to the court for determination after the settlement.

*Malchman*, 761 F.2d at 905 n.5.[20]

In fact, the Second Circuit rejected an objector's argument relating to a negotiated fee

provision holding "that such provisions, without more, do not provide grounds for vacating the

fee."  *Blessing v. Sirius XM Radio Inc.*, No. 11 Civ. 3696, 2012 WL 6684572, at *2 (2d Cir.

2012).  The Second Circuit found support for its position in the fact that the district court

independently analyzed the fee request (an analysis that Class Counsel welcomes and always

understood would occur in this case).  *See id.* (endorsing the Second Circuit's decision in

*Malchman* on "clear sailing" provisions).

---

[20] *See e.g., Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) (affirming
award of fees and expenses, where defendant had agreed not to oppose request for fees and
expenses up to a negotiated ceiling and to be paid separately from class settlement benefits);
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (upholding the district court's
award of attorneys' fees where the court had approved attorneys' fees and costs of $5.2 million
that were negotiated after the final settlement was achieved); *M. Berenson Co. v. Faneuil Hall
Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by
statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees,
ideally the parties will settle the amount of the fee between themselves.").  *Cf., Ingram v. Coca-
Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee
amount"); *In re Apple Computer, Inc. Deriv. Litig.*, No. 06 Civ. 4128 (JF), 2008 WL 4820784, at
*3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a
properly bargained-for agreement"); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005)
("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts
give the parties' agreement substantial deference.") (citations omitted).

As such, Class Counsel respectfully submits that the fact that the fee was negotiated at arm's length and the fact that it will in no way reduce the funds available for the Class support the approval of the fee request.

### C. The Second Circuit Has Approved Both The Percentage Method And The Lodestar Method, But The Percentage Method Is Preferred.

Courts have developed two methods for awarding attorneys' fees in successful class actions: the percentage method and the lodestar/multiplier method. *Maley*, 186 F. Supp. 2d at 369. A court applying the percentage method "sets some percentage of the recovery as a fee." *Goldberger*, 209 F.3d at 47 (citation omitted). In doing so, the court considers six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. *Accord Polaroid*, 2007 WL 2116398, at *2. Courts consider the same factors in applying the lodestar method. *Id.*[21] Here, the fee requested is plainly justified under either method.

### D. The Requested Fee Is Justified Under the Percentage Method.

#### 1. The Full Value Of The Settlement Fund Available Is Considered.

Attorneys' fees awarded as a percentage of a fund must take into consideration the entirety of the fund, not only that portion received directly by the class members. *See Masters*,

---

[21] The Second Circuit has held that a district court may use either method. *See Goldberger*, 209 F.3d at 50. However, the Second Circuit disfavors the lodestar method because it "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 122 (internal citation and quotation marks omitted). The percentage method is considered preferable "because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition." *Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (citation omitted).

473 F.3d at 437. In *Masters*, the Second Circuit held that: "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not. We side with the circuits that take this approach." *Id.*[22] The Court continued, "[o]ur own cases refer to 'percentage of the fund,' and 'percentage of the recovery.' We take these references to be to the whole of the Fund." *Id.* (emphasis in original, citations omitted). *See also Torres*, 2013 WL 2257859, at *3 (calculating fees "on the basis of the total funds made available."); *Aros v. United Rentals, Inc.*, No. 10 Civ. 73, 2012 WL 3060470 (D. Conn. July 26, 2012) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants.").[23]

---

[22] Citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) (approving district court's award of 33 1/3% based "on a percentage of the total fund rather than the actual payments made to class members."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (per curiam) (reversing the district court award of 33% of the claimed fund and instead awarding attorneys' fees of $4.5 million or 33% of the total funds that were available to the class even though the actual payout only totaled approximately $10,000.).

[23] *See, e.g., Van Gemert*, 444 U.S. 472 (confirming the permissibility of using the entire fund as the appropriate benchmark); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194 (GEL), 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (quoting *Masters*, 473 F.3d at 437) ("[T]his Circuit has ruled that '[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available whether claimed or not.'"); *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 443 (S.D.N.Y. 2004) (noting that attorneys' fees equivalent to one-third of common fund of $18.4 million was approved notwithstanding that only $5.6 million of the $18.4 was claimed by class members with the remaining $11.8 million unclaimed and reverting to the defendants); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (awarding $625,000 of $2.1 million fund amount despite only $500,000 in claims); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:6, at 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a

Moreover, in a "constructive fund" case such as this, it is appropriate to add the amount made available to the class to the attorneys' fees and expenses requested to determine the value of the total fund for purposes of determining the percentage of the fund the fee request represents. *See, e.g.*, *Torres*, 519 Fed. Appx. at 5; *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); Manual for Complex Litigation, Fourth, § 21.71 p. 525 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class . . . ").[24]

As recited earlier, Plaintiffs' requested fee is just 6–9% of the settlement value, and is thus well under the customary 33.33% awarded to counsel in class action settlements. Wittels Dec. ¶29.

---

reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

[24] *See also Hubbard v. Donahoe*, No. 03 Civ. 1062 (RJL), 2013 WL 3943495, at *4, 8 (D.D.C. July 31, 2013) (collecting cases) (awarding $910,000 of the $4,550,000 benefit to the class and holding that "the Court considers the separate funds for class recovery and attorneys' fees collectively as a 'constructive common fund,' valued at $4,550,000."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012) (collecting cases and awarding attorneys' fees equal to 20% of the settlement value and holding that "[h]aving two funds—one for the claimants, one for the attorneys—is a well-recognized variant of a common-fund arrangement."); *Lopez v. Youngblood*, No. 07 Civ. 0474 (DLB), 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) (awarding 28.5% of the percentage of the recovery where attorneys' fees were paid separate and apart from benefit to the class and citing with approval *Johnston* and *In re Vitamins Antitrust Litig.*, No. 99 Civ. 197 (TFH), 2001 WL 34312839, at *4 (D.D.C. July 16, 2001)); *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007) (awarding 22.5% of value of recovery and holding that "the Court believes that the settlement in this case represents a constructive common fund" despite the fact that "the settlement has separate funds for class recovery and attorneys' fees.").

## 2. The Fee Award Is Supported By the Goldberger Factors.

At 6-9% of the total Settlement value, the attorneys' fees and expenses that Class Counsel is seeking and which IDT has agreed to pay separate and apart from the Class recovery is at the very low end of the spectrum of fee awards repeatedly approved by the Courts of this Circuit, with many cases awarding close to 33% of the settlement value. *See, e.g.*, *In re Marsh*, 265 F.R.D. at 149 (collecting cases and awarding $11,665,500 or one-third of the $35,000,000 settlement); *Hernandez*, 2013 WL 1209563, at *8 (awarding attorneys' fees in the amount of "$2,310,000 which is 33% of the settlement fund," plus costs); *Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836 (RLE), 2013 WL 1803736, at *12 (S.D.N.Y. Apr. 29, 2013) (awarding attorneys' fees equal to 33% of $4.9 million settlement fund, plus costs); *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653 (BSJ), 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding attorneys' fees equal to 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *In re Marsh*, 265 F.R.D. at 146 (awarding attorneys' fees equal to 33.33% of $35 million settlement, plus costs); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit") (citing cases); *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 443 (S.D.N.Y. 2004) (noting that attorneys' fees equivalent to one-third of common fund of $18.4 million was approved notwithstanding that only $5.6 million of the $18.4 was claimed by class members with the remaining $11.8 million unclaimed and reverting to the defendants); *Maley*, 186 F. Supp. 2d at

370–71 (awarding $3,832,950 out of $11,500,000 settlement fund); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding $2,583,333 out of $7,750,000 settlement fund); *In re Crazy Eddie Securities Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding $14,200,000 out of $45,000,000 common fund).

### i.    The Time and Labor Expended By Counsel

The time and labor expended by Class Counsel are set forth in detail in their accompanying declarations.[25]  Altogether, counsel devoted more than 5,000 hours over the course of more than three years of prosecuting the Actions.  As set forth above, Plaintiffs' counsel exhaustively investigated Plaintiffs' claims by communicating with Plaintiffs, reviewing their files, obtaining copies of the relevant contractual terms and conditions and samples of Defendants' marketing materials, researching what causes of action to assert against IDT, and developing a theory of the case and litigation strategy.  *See* Blankinship Dec. ¶ 2; Wittels Dec. ¶ 2; Shub Dec. ¶ 2; Mendelsohn Dec. ¶ 2; Schelkopf Dec. ¶ 2; Frederick Dec. ¶ 2.  They also identified the relevant energy markets and the rates available from local utilities and other independent energy suppliers or ESCOs.  *See* Blankinship Dec. ¶ 2; Wittels Dec. ¶ 2; Shub Dec. ¶¶ 2-3.  After the initiation of the Actions, the parties engaged in motion practice, fully briefing motions to dismiss and motions to strike, among other motions.[26]  Plaintiffs and Defendants also engaged in substantial discovery

---

[25] *See* Blankinship Dec. ¶¶ 5-6; Wittels Dec. ¶¶ 9-11; Shub Dec. ¶¶ 5-6; Mendelsohn Dec. ¶¶ 6-7; Schelkopf Dec. ¶¶ 5-6; Frederick Dec. ¶¶ 5-6.

[26] *See, e.g.*, Dkt. Nos. 12, 13, 26–31, 32–34, 36, 38, 39, 40–42, 44–50, 52, 55, 71–82; *see also* Dkt. Nos. 5, 17, 19, 20, 21, 24, 25, 27 in *Ferrare v. IDT Energy, Inc.*, No. 14 Civ. 4658 (E.D. Pa.); Doc. Nos. 2, 4, 13, 16, 20, and 22 in *Aks v. IDT Energy, Inc.*, No. L-04936-14 (Super. Ct. N.J. Essex County).

and exchange of documents and information, necessitating review and analysis by Class

Counsel. *See* Blankinship Dec. ¶ 3; Wittels Dec. ¶ 4; Shub Dec. ¶ 3.

While litigating the Actions, the parties met telephonically and in person to discuss a

comprehensive settlement of the claims of the Named Plaintiffs and the proposed Class. *See* Wittels

Dec. ¶ 5. Plaintiffs' counsel also met internally to review the strategy for and the status of settlement

negotiations. *See* Blankinship Dec. ¶ 3; Wittels Dec. ¶ 5; Shub Dec. ¶ 3; Mendelsohn Dec. ¶ 3;

Schelkopf Dec. ¶ 3; Frederick Dec. ¶ 3. Finally, Plaintiffs' counsel engaged in two mediation

sessions with Defendants' counsel before reaching an agreement to settle the Actions. *See*

Wittels Dec. ¶¶ 5-6. As part of Plaintiffs' investigation and to prepare for class certification and

trial on the merits, Class Counsel also engaged the services of and consulted with an expert, Dr.

Frank Felder, who provided his expertise in analyzing the manner in which IDT set its rates and

determining the extent to which IDT's rates were in excess of rates charged by other ESCOs and

local utilities. *See* Blankinship Dec. ¶ 3; Wittels Dec. ¶ 5; Shub Dec. ¶ 3; Mendelsohn Dec. ¶ 3;

Schelkopf Dec. ¶ 3; Frederick Dec. ¶ 3.

### ii.     The Magnitude and Complexity Of the Litigation

The requested fee award is reasonable in light of the magnitude and complexity of the

litigation. The Class itself comprises 1,876,481 members and Defendants agreed to a settlement

with a total value of between $46,445,009.00 and $69,785,000.00. By any measure, the

magnitude of the case is substantial, fully justifying Class Counsel's investment of time and

labor, and fully merits the requested fee award.

In addition, the litigation involves a number of complex legal and factual issues. The

magnitude and complexity of this action is even greater because of the multiple states in which

IDT is operating, the differing disclosures that IDT made in each state, and the prevailing electric

and gas rates at the times when these disclosures were made. These were ever-changing facts presenting unique challenges to Class Counsel.

If not for the Settlement, the need to research, brief, and develop factual submissions on class certification and summary judgment relating to these issues would increase the expense, complexity, and duration of the litigation. Moreover, assuming Plaintiffs' claims survived Defendants' opposition to class certification and inevitable summary judgment motion, trial preparation would have required countless hours of additional work, including preparing fact and expert witnesses, identifying exhibits, preparing proposed jury instructions, and preparing cross-examination outlines. The trial itself would consume significant judicial resources and would engender additional motion practice (including evidentiary motions and any dispositive motions filed during or at the close of trial). Further, an appeal would have added to the complexity of the litigation. This is especially likely in view of the experience of defense counsel in litigating consumer class actions. *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592–93 (S.D.N.Y. 1973) (prestige of opposing counsel highlights complexity of litigation and challenges faced by class counsel). The magnitude and complexity of the litigation weigh heavily in favor of the requested fee award.

### iii.     The Risk Of Litigation

As discussed above, Plaintiffs' counsel and Plaintiffs faced obstacles in successfully prosecuting this case. The Second Circuit has recognized that the risk involved in prosecuting a class action is an important consideration in determining an appropriate fee award. The case law contains many examples of unsuccessful class actions that provided no relief to the putative class and no fee for class counsel. *See, e.g., In re Veeco Instruments*, 2007 WL 4115808, at *6 ("[T]he risk of non-payment in complex cases, such as this one, is very real. There are numerous

class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery.") (collecting cases). This factor thus reflects that cases taken on a contingent fee basis entail risk of non-payment for the attorneys that prosecute them, and it embodies a principle that contingency work is entitled to greater compensation than non-contingency work. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008); *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03 Civ. 7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier[.]"). As the Second Circuit has observed:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*In re Hi-Crush Partners*, 2014 WL 7323417, at *15 (quoting *Grinnell Corp.,* 495 F.2d at 470).

Plaintiffs' counsel incurred 100% of the risk, devoting their time and labor gathering evidence of Defendants' suspected wrongdoing, evaluating Defendants' potential liability, analyzing potential legal theories, drafting the complaints, and engaging in substantial motion practice and discovery and investigation. Throughout, there was no assurance of success or compensation. The requested fee award is entirely reasonable in light of the risks incurred by Plaintiffs' counsel.

### iv. The Quality Of Representation

The quality of Class Counsel's representation is reflected in the reputation of Class Counsel; the experience of the attorneys principally involved in these action; and above all, the

manner in which they prosecuted these actions from the pleadings, through motion practice and discovery, to the settlement negotiations and the instant motion for final approval.

The Court has observed first-hand in these cases the skills and abilities of Class Counsel, and Class Counsel enjoys a strong reputation in the area of complex and class action litigation. *See* Blankinship Dec. ¶ 4; Wittels Dec. ¶ 8; Shub Dec. ¶ 4; Mendelsohn Dec. ¶ 4; Schelkopf Dec. ¶ 4; Frederick Dec. ¶ 4. Moreover, Class Counsel has demonstrated its ability to successfully prosecute these actions, having survived motions to dismiss similar actions. *See, e.g.*, Blankinship Dec. ¶ 4; Wittels Dec. ¶ 3; Shub Dec. ¶¶ 4-5; Mendelsohn Dec. ¶¶ 4-5; Schelkopf Dec. ¶ 4; Frederick Dec. ¶¶ 4-5. Moreover, as demonstrated by their firm resumes, the various attorneys comprising Class Counsel have been appointed class counsel in numerous other cases and are highly experienced and knowledgeable in the area of complex and class action litigation. *See* Blankinship Dec. ¶ 4 and Ex. 1; Wittels Dec. ¶ 9 and Ex. A; Shub Dec. ¶¶ 4-5 and Ex. A; Mendelsohn Dec. ¶¶ 4-5 and Ex. A; Schelkopf Dec. ¶¶ 4-5 and Ex. A; Frederick Dec. ¶¶ 4-5 and Ex. A.

The Settlement negotiated with Defendants is a highly favorable outcome for the Class, and is the direct result of the creativity, diligence, hard work, and skill brought to bear by Plaintiffs' counsel at every stage of the proceedings. Throughout the litigation, Plaintiffs' counsel have put the best interests of the Class ahead of theirs, negotiating the most favorable settlement terms possible and then negotiating a fee to be paid by IDT, rather than the Class, and which in no way diminishes or erodes the benefits received by Class members. Plaintiffs' counsel's exemplary prosecution of this class action weighs strongly in favor of the proposed fee award.

The high quality of the opposition that Plaintiffs' counsel faced is further testament to the quality of Plaintiffs' counsel's representation. IDT is represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases. Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in these cases, it supports final approval of the requested fee. *See, e.g.*, *In re Marsh*, 265 F.R.D. at 148 (reasonableness of fee was supported by fact that the "high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement").

### v.      The Requested Fee In Relation To the Settlement

Federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit. *See, e.g.*, *In re Marsh*, 265 F.R.D. at 149 (collecting cases and awarding $11,665,500 or one-third of the recovery). Plaintiffs only request $4,290,000.00, which is 6% to 9% of the total value of the Settlement, including attorneys' fees and expenses and the cost of settlement administration. Plaintiffs secured Defendants' agreement to pay this amount separate and apart from the benefit obtained for the Class. On a percentage basis, the compensation requested here is plainly well within the range of percentage fee awards within the Second Circuit, particularly in cases with similarly-sized settlements. *See, e.g.*, *Hernandez*, 2013 WL 1209563, at *8 (awarding "$2,310,000 which is 33% of the settlement fund"); *Clark v. Ecolab Inc.*, 2010 WL 1948198, at *8 (awarding fees of 33% of $6 million settlement fund); *Willix*, 2011 WL 754862, at *6 (awarding "$2,558,333 in attorneys' fees or one third (33 1/3%) of the Fund"); *Hicks*, 2005 WL 27257792, at *9 (awarding 30% of $10 million

settlement, plus expenditures); *Maley*, 186 F.Supp.2d at 370 (awarding 33 1/3% of fund valued

at $11.5 million); *In re Warnaco Group, Inc. Sec. Litig.*, No. 00 Civ. 6266 (LLM), 2004 WL

1574690, at *3 (S.D.N.Y. July 13, 2004) (30% of $12.85 million settlement); *Khait v. Whirlpool

Corp.*, No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *8-9 (E.D.N.Y. Jan. 20, 2010) (awarding

$3,052,500 or 33% of settlement fund).

The $4,290,000.00 award for fees and expenses that Class Counsel has requested, and

that IDT has agreed to pay, is in line with awards from courts within this Circuit in similar

circumstances and leans towards the lower end given the particular facts of this case and the size

of the Settlement.

### vi. Public Policy Considerations

Strong public policy supports rewarding counsel for bringing successful consumer

protection litigation. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400

(CM) (PED), 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (holding that if the "important

public policy [of enforcing consumer protection laws] is to be carried out, the courts should

award fees which will adequately compensate Lead Counsel for the value of their efforts, taking

into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In

considering an award of attorney's fees, the public policy of vigorously enforcing [consumer

protection] laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that

the public is represented by talented and experienced trial counsel, the remuneration should be

both fair and rewarding.").

The Settlement provides substantial benefits to the public as well as the individual IDT

consumers. It serves public policy as embodied in state consumer fraud statues and the common

law of contract by compensating consumers, holding IDT accountable for its allegedly

misleading advertising, and deterring future deceptive practices by IDT. This deterrent effect, moreover, should carry over to other ESCOs, who will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure if they fail to accurately advertise the energy rates they intend to charge their customers. "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010).

Moreover, the fee request does not bestow a windfall on Class Counsel (*see* lodestar cross-check *infra*). Therefore, the policy of awarding fees in a lower range to account for economies of scale and to prevent windfalls is not at issue here. Simply put, there is no reason to depart from the $4,290,000.00 that IDT has agreed to pay, as this amount falls squarely within the range of fees normally approved within this Circuit under either the percentage of the fund or lodestar methodology, and any reduction would be against public policy as it would discourage future class counsel from bringing similar cases and reward the alleged wrongdoer for the benefit of neither the Class or the public at large.

Taking into account all the *Goldberger* factors, a $4,290,000.00 award to Class Counsel comprises a reasonable percentage of the benefit bestowed on the Class and should be approved.

### E.    The Fee Is Justified Under the Lodestar/Multiplier Method.

Application of the lodestar method confirms the reasonableness of Class Counsel's request. Despite its criticism of the lodestar method, the Second Circuit has advised that it remains potentially useful as a "cross-check" against the percentage method. *Goldberger*, 209 F.3d at 50. "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized[.]" *Id.* (citation omitted).

Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rates, and then the court adjusts that lodestar figure (by applying a multiplier) "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Flag Telecom Holdings*, 2010 WL 4537550, at *23. *See also Maley*, 186 F. Supp. 2d at 370 (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted). "In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court." *In re Telik*, 576 F. Supp. 2d at 590 (noting that a multiplier of 4.65 was "well within the range awarded by courts in this Circuit and courts throughout the country") (citing *Maley*, 186 F. Supp. 2d at 369).

The fee requested for these cases is more than justified under the lodestar method. Plaintiffs' counsel reasonably devoted over 5,000 hours to these actions, including time spent researching the facts and the law, drafting the complaints, conducting discovery, engaging in motion practice, and negotiating the settlement. Applying Plaintiffs' counsel's hourly rates,[27] which are reasonable and well within the range typically charged by similarly well-qualified counsel in this District, yields a lodestar of $3,200,000 with expenses.

Moreover, the hourly rates charged by counsel are reasonable in comparison with other firms in the Southern District. "[T]he American Lawyer recently reported that the median billing

---

[27] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163–64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998).

rate for partners at many leading law firms exceeds $900/hour. *In re Flag Telecom Holdings*, 2010 WL 4537550, at *26.[28]

Comparing the lodestar with the requested fee of $4,290,000 yields a multiplier of 1.25 Such a modest multiplier is unquestionably within the range of multipliers found reasonable by courts in this Circuit, and is fully justified in light of the effort undertaken, the recovery achieved, risks involved, and the efficiency with which these cases were litigated. In sum, the 1.25 multiplier sought here is reasonable and within the range approved in past cases.[29]

**F.      The Reaction Of the Class Is Overwhelmingly Favorable.**

Courts give "great weight" to the reaction by members of the Class to a class action settlement. *Maley*, 186 F. Supp. 2d at 374 (citation omitted). Numerous courts have noted that the lack of objection from members of the class is one of the most important factors in

---

[28] *See, e.g., In re Nissan Radiator/Transmission Cooler Litig.,* No. 10 Civ. 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (finding reasonable attorneys' fees based on hourly rates ranging from $750 (partner) to $650 (associate)); *Chin v. RCN Corp.*, No. 08 Civ. 7349, 2010 WL 3958794, at *5-6 (S.D.N.Y. Sept. 8, 2010) (approving a "blended" hourly rate of approximately $605); *In re Converse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825 (NGG) (RER), 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (hourly rates up to $880 were "not extraordinary for top New York law firms"); *In Re Telik*, 576 F. Supp. 2d at 589-90 (noting that hourly rates of $700-$750 for partners were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work).

[29] *See, e.g., Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531 (FM), 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Hernandez*, 2013 WL 1209563, at *9 (Awarding lodestar multiplier of 3.8, holding it "well within the range of multipliers that have been granted by courts in this Circuit and elsewhere" and noting that "Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.") (collecting cases); *Spicer v. Pier Sixty LLC,* No. 08 Civ. 10240 (LBS), 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.") (quoting *In re Telik*, 576 F. Supp. 2d at 590); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar.").

determining the reasonableness of a requested fee. *Id. See also Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (lack of objections is "strong evidence" of the reasonableness of the fee request). Here, Class Notice approved by the Court was mailed to 1,876,481 Class members. The Class Notice advised that Class Counsel would seek court approval of fees and expenses in an amount up to $4,290,000 and that IDT had agreed to pay such fees and expenses separate and apart from the relief provided to the Class. As of March 30, 2018 no Class member has objected to the Settlement. Moreover, none of the Class members expressed any reservations about Class Counsel's anticipated fee request in the calls to the Settlement Administrator. This "overwhelmingly positive response to date by the Class attests to the approval of the Class with respect to both the Settlement and the fee and expense application." *In re Flag Telecom Holdings*, 2010 WL 4537550, at *29; *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("Notice of the fee request and the terms of the settlement were mailed to 300,000 class members, and only two objected. We agree with the District Court such a low level of objection is a 'rare phenomenon.'") (citation omitted).

G.   **The Expenses Incurred Are Reasonable and Were Necessary To Achieve the Benefit Obtained.**

Plaintiffs' counsel's fee application includes a request for $40,000.00 reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of these actions. *See* Wittels Dec. ¶ 10. These expenses are properly recovered by counsel. *See In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'"). As set forth in detail in the declarations filed herewith, Plaintiffs' counsel collectively incurred $61,017.86 in litigation expenses on behalf of the Class

in the prosecution of these actions.[30]  This amount is in excess of the $40,000.00 cap imposed by the Settlement Agreement.[31]  Wittels Dec. ¶ 10.  Reimbursement of these expenses is fair and reasonable and the expenses are encompassed by the $4,290,000.00 request.  *See, e.g.*, *In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.*, No. 09 MD 2102 (RPP), 2010 WL 3422722, at *8–9 (S.D.N.Y. Aug. 24, 2010) (approving flat payment covering fees and expenses).

All of the expenses were reasonable and necessary to the prosecution of these actions, and are of the type that law firms typically bill to their clients and that courts typically approve for reimbursement.[32]

## VI.     THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS.

Providing named plaintiff enhancement awards, also known as service awards, to consumers who come forward to represent a class is a necessary and important component of any class action settlement.  *See Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE), 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014) ("Service awards are common in class action cases and

---

[30] *See* Blankinship Dec. ¶ 6; Wittels Dec. ¶ 11; Shub Dec. ¶ 6; Mendelsohn Dec. ¶ 7; Schelkopf Dec. ¶ 6; Frederick Dec. ¶ 6.

[31] Settlement Agreement, Dkt. No. 98-1, at 4.

[32] *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (awarding expenses for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services") (internal quotations omitted); *In re Veeco Instruments*, 2007 WL 4115808, at *10 (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); *In re China Sunergy*, 2011 WL 1899715, at *6 (same).

serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. It is important to compensate plaintiffs for the time they spend and the risks they take. The Court finds reasonable service awards of $12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement.") (citations omitted); *Elliot v. Leatherstocking Corp.*, No. 10 Civ. 0934 (MAD) (DEP), 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012) ("Service awards are common in class action cases and are important to compensate a plaintiff for the time and effort expended in assisting in the prosecution of the litigation.").

Plaintiffs' counsel respectfully request that the Court approve the payment of Service Awards to the Named Plaintiffs in the amount of $6,000.00 each in recognition of their efforts on behalf of the Class. Wittels Dec. ¶ 8. Pursuant to the Settlement Agreement, IDT has agreed to pay these awards using its own resources, which means these payments will not reduce the benefits provided to the Class members. The requested payments are well-deserved and fall well within the range of incentive awards approved in prior cases. *Polaroid*, 2007 WL 2116398, at *3 (citing *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000 to representative plaintiffs in class actions)). Moreover, as with the fee request, the service award request was subject to arm's length negotiations between parties and was adequately disclosed in advance to the Class.

Plaintiffs reviewed and discussed with Class Counsel the pleadings, discovery demands, discovery responses, and memoranda of law. *See* Wittels Dec. ¶¶ 7-8; Shub Dec. ¶ 4; Mendelsohn Dec. ¶ 4; Schelkopf Dec. ¶ 4; Frederick Dec. ¶ 4. Plaintiffs conferred with their respective counsel regarding the status of the cases and the settlement negotiations, at all times

encouraging Class Counsel to obtain the best possible result for the absent class members. *See* Shub Dec. ¶ 4; Mendelsohn Dec. ¶ 4; Schelkopf Dec. ¶ 4; Frederick Dec. ¶ 4. Plaintiffs' participation was substantial and indispensable.

## CONCLUSION

Plaintiffs respectfully request that the Court finally approve the Settlement Agreement, certify the Settlement Class, enter the proposed Final Approval Order that Plaintiffs will submit separately to the Court, and approve the Named Plaintiff Service Awards and requested attorneys' fees and expenses.

Dated: April 2, 2018

White Plains, New York

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: */s/ D. Greg Blankinship*
D. Greg Blankinship
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
gblankinship@fbfglaw.com

**WITTELS LAW, P.C.**

By: */s/ Steven L. Wittels*
Steven L. Wittels
J. Burkett McInturff
Tiasha Palikovic
18 Half Mile Road
Armonk, New York 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Counsel for Plaintiffs and the Class*

Matthew R. Mendelsohn
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068

Matthew D. Schelkopf
McCune Wright, LLP
1055 Westlakes Drive, Suite 300
Berwyn, Pennsylvania 19312

Jonathan Shub
Kohn Swift & Graf
1 South Broad Street #2100
Philadelphia, Pennsylvania 19107

Troy M. Frederick
Marcus & Mack, P.C.
57 South Sixth Street (The Mitchell House)
Indiana, Pennsylvania 15701

*Co-Counsel for Plaintiffs and the Class*